

12-5-07RCP135196-LJT

65100-1120LIT-4740

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES T. SULLIVAN, not individually but as Trustee )
of PLUMBERS' PENSION FUND, LOCAL 130, U.A., )
PLUMBERS' WELFARE FUND, LOCAL 130, U.A., )
THE TRUST FUND FOR APPRENTICE AND )　　　No.
JOURNEYMEN EDUCATION AND TRAINING, )
LOCAL 130, U.A., and CHICAGO JOURNEYMEN )
PLUMBERS' LOCAL UNION 130, U.A.,
GROUP LEGAL SERVICES PLAN FUND,

**07CV6886
JUDGE ANDERSEN
MAG. JUDGE KEYS**

　　　　　　　　　　　　　　　Plaintiff,

　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
JOLIET PLUMBING AND HEATING, INC.,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Defendant.　)
　　　　　　　　　　　　　　　　　　)

DEC 06 2007

╷ **FILED**

DEC - 6 2007

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

**COMPLAINT**

NOW COMES Plaintiff, JAMES T. SULLIVAN, not individually but as Trustee of

PLUMBERS' PENSION FUND, LOCAL 130, U.A., PLUMBERS' WELFARE FUND, LOCAL

130, U.A., THE TRUST FUND FOR APPRENTICE AND JOURNEYMEN EDUCATION

AND TRAINING, LOCAL 130, U.A., and CHICAGO JOURNEYMEN PLUMBERS' LOCAL

UNION 130, U.A., GROUP LEGAL SERVICES PLAN FUND, by his attorneys, DOUGLAS A.

LINDSAY, JOHN W. LOSEMAN, and LISA M. SIMIONI, with LEWIS, OVERBECK & FURMAN,

LLP, of counsel, and, for his Complaint against Defendant, JOLIET PLUMBING AND

HEATING, INC., states:

1

1.     This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1132, 1145 ("ERISA"), and the Labor-Management Relations Act of 1947, 29 U.S.C. §185 ("LMRA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2.     Plaintiff is a Trustee of PLUMBERS' PENSION FUND, LOCAL 130, U.A., PLUMBERS' WELFARE FUND, LOCAL 130, U.A., THE TRUST FUND FOR APPRENTICE and JOURNEYMEN EDUCATION AND TRAINING, LOCAL 130, U.A., and CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A., GROUP LEGAL SERVICES PLAN FUND ("the Funds"), and is authorized to bring this action on their behalf. The Funds are "employee benefit plans" and "plans" under ERISA and LMRA, and have been established pursuant to collective bargaining agreements previously entered into between Chicago Journeymen Plumbers' Local Union 130, U.A. ("Union") and certain employer associations whose employees are covered by collective bargaining agreements with Union.

3.     Defendant is an "employer" under ERISA and LMRA.

4.     There was in effect on and after October 30, 1995, written Collective Bargaining Agreements ("Agreements") between Union and Defendant. True and correct copies of the Agreements for the period from June 1, 2004, through May 31, 2010, and the signature page dated October 30, 1995, are attached hereto as Exhibit A.

5.     Pursuant to the Agreements, Defendant is obligated and agreed to make contributions to the Funds based upon hours worked by each employee covered by the Agreements.

6.     Pursuant to the Agreements, Defendant is obligated and agreed to make

2

contributions to Funds based upon hours worked by each employee covered by the Agreements; to file with Union, on or before the 1st day of each month, an itemized report of payments due to Funds for the preceding month; to pay all contributions to Funds at the time of filing the itemized report; if requested by Union or Funds, to make all books and records available for the purpose of determining compliance with the Agreements; to pay liquidated damages and interest on contributions not timely paid to Funds; and to pay all costs incurred by Funds, including, but not limited to, legal, audit, and court fees, to enforce collection of any monies due.

7.     Defendant has breached its obligations under the Agreements by failing and refusing to cooperate in an audit.

8.     Defendant's refusal and failure to perform its obligations under the Agreements is causing, and will continue to cause, irreparable injury to Funds for which they have no adequate remedy at law.

WHEREFORE, Plaintiff, JAMES T. SULLIVAN, etc., prays as follows:

a.     That an accounting be made as to wages received and hours worked by all employees of Defendant who are covered by the Agreements to determine amounts required to be paid to Funds, for the period from October 1, 2004, to the present;

b.     That Defendant be enjoined and ordered to fully complete and submit to Union all delinquent monthly contribution reports, to continue to submit such reports while this action is pending, and to timely submit such reports in the future;

c.     That judgment be entered in favor of Plaintiff and against Defendant for all unpaid contributions, penalties, interest, liquidated damages, audit costs, attorneys' fees, court costs, and for such additional damages as are allowed under ERISA and/or the Agreements;

d.     That the Court award to Plaintiff such other and further relief as the Court may deem just and equitable.

3

JAMES T. SULLIVAN, etc.,
by his attorneys, DOUGLAS A. LINDSAY,
JOHN W. LOSEMAN, and LISA M. SIMIONI

By:

Douglas A. Lindsay
LEWIS, OVERBECK & FURMAN, LLP
20 North Clark Street
Suite 3200
Chicago, IL 60602-5093
(312) 580-1251

Of Counsel:
LEWIS, OVERBECK & FURMAN, LLP
20 North Clark Street
Suite 3200
Chicago, IL 60602-5093
(312) 580-1200

4

# EXHIBIT A

# AGREEMENT

between

## PLUMBING CONTRACTORS ASSOCIATION

### OF

### CHICAGO and COOK COUNTY



and

## CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A.



June 1, 2004 through May 31, 2007

EXHIBIT No. A
PAGE 1 OF 56

**TABLE OF CONTENTS**

| | Page |
|---|---|
| ARTICLE I - RECOGNITION | |
| SECTION 1.1. Parties to the Agreement | 7 |
| SECTION 1.2. Recognition Clause | 7 |
| SECTION 1.3. Union Shop | 7 |
| SECTION 1.4. Subcontracting | 8 |
| SECTION 1.5. Moonlighting | 8 |
| SECTION 1.6. Access to Premises | 9 |
| SECTION 1.7. Exclusivity | 9 |
| ARTICLE II - STRIKES AND LOCKOUTS | 9 |
| SECTION 2.1. Lockouts | 9 |
| SECTION 2.2. Employee Job Action | 9 |
| ARTICLE III - DISPUTE RESOLUTION | 10 |
| SECTION 3.1. Grievance Arbitration | 10 |
| SECTION 3.2. Joint Arbitration Board | 10 |
| SECTION 3.3. Audits | 11 |
| SECTION 3.4. Other Contract Violations | 12 |
| SECTION 3.5. Hearing | 12 |
| SECTION 3.6. Powers of the Joint Arbitration Board | 12 |
| SECTION 3.7. Indemnification of the Joint Arbitration Board | 13 |
| ARTICLE IV - WORKING CONDITIONS | 14 |
| SECTION 4.1. General Policy | 14 |
| SECTION 4.2. Reporting Accidents | 14 |
| SECTION 4.3. Employer Insurance. | 15 |
| SECTION 4.4. Unsafe Working Conditions. | 15 |
| SECTION 4.5. Plumbing Codes | 15 |
| SECTION 4.6. Older Workers | 15 |

2

EXHIBIT No. A
PAGE 2 OF 56

## TABLE OF CONTENTS

Page

SECTION 4.7. Non-Discrimination Policy .................................................. 15

SECTION 4.8. Staffing .................................................................................. 16

SECTION 4.9. Pipe Cutting .......................................................................... 17

SECTION 4.10. Specifications ...................................................................... 17

SECTION 4.11. Plumbing Supervision ....................................................... 18

SECTION 4.12. Rule Violators .................................................................... 18

SECTION 4.13. OSHA and HAZCOM Training ....................................... 18

SECTION 4.14. OSHA and HAZCOM Violations ................................... 18

SECTION 4.15. Automobile Not Required ................................................. 19

SECTION 4.16. Work Connected Expenses ............................................... 19

SECTION 4.17. Travel Expenses ................................................................. 19

SECTION 4.18. Tool Provision ................................................................... 19

SECTION 4.19. Clothing Provision ............................................................ 20

ARTICLE V - HOURS AND OVERTIME ................................................ 20

SECTION 5.1. Work Day and Work Week ................................................. 20

SECTION 5.2. Overtime ............................................................................... 22

SECTION 5.3. Show Up Pay ........................................................................ 22

SECTION 5.4. Holidays ............................................................................... 22

SECTION 5.5. Shift Work ............................................................................ 23

ARTICLE VI - WAGES ............................................................................... 23

SECTION 6.1. Wage Rates and Fringe Benefits ....................................... 23

SECTION 6.2. Foreman's Wage ................................................................. 24

SECTION 6.3. Apprentice's Wage .............................................................. 24

SECTION 6.4. Pay Day ................................................................................ 24

SECTION 6.5. Wage Payment .................................................................... 24

SECTION 6.6. Union Dues Deduction ....................................................... 25

SECTION 6.7. Pay at Separation ................................................................ 25

SECTION 6.8. Bond Requirement .............................................................. 25

EXHIBIT No. A
PAGE 3 OF 56

# TABLE OF CONTENTS

| | Page |
|---|---|
| SECTION 6.9.  Prevailing Wage Payment. | 27 |
| SECTION 6.10.Retirement Savings Fund. | 27 |
| **ARTICLE VII - FOREMEN** | 28 |
| SECTION 7.1.  Foreman's Duties. | 28 |
| SECTION 7.2.  Foreman's Schedule. | 29 |
| **ARTICLE VIII - APPRENTICES** | 29 |
| **ARTICLE IX - FRINGE BENEFITS** | 30 |
| SECTION 9.1.  Savings Plan | 30 |
| SECTION 9.2.  Health & Welfare and Pension Plan | 30 |
| SECTION 9.3.  Apprentice Trust Fund | 31 |
| SECTION 9.4.  Plumbing Council of Chicagoland. | 32 |
| SECTION 9.5.  Group Legal Services Plan Fund | 33 |
| SECTION 9.6.  Industry Advancement Fund. | 34 |
| SECTION 9.7.  Non-Deduction from Wages | 34 |
| SECTION 9.8.  Contribution and Deduction Due Dates | 34 |
| SECTION 9.9.  Employer Recording | 36 |

4

EXHIBIT NO. A

PAGE 4 OF 52

## TABLE OF CONTENTS

| | Page |
|---|---|
| ARTICLE X - HIRING | 36 |
| ARTICLE XI - ON THE JOB INJURIES | 37 |
| ARTICLE XII - INDUSTRY COMMITTEE | 38 |
| ARTICLE XIII - JURISDICTIONAL DISPUTES | 38 |
| ARTICLE XIV - SUCCESSORS AND ASSIGNS | 39 |
| SECTION 14.1. Employer Entities Bound | 39 |
| SECTION 14.2. Successors and Assigns | 39 |
| ARTICLE XV - ANNUAL REOPENERS | 39 |
| ARTICLE XVI - MISCELLANEOUS | 39 |
| SECTION 16.1. Separable Provisions | 39 |
| SECTION 16.2. Duration of Agreement | 40 |
| ARTICLE XVII - SERVICE & MAINTENANCE AGREEMENT | 40 |
| APPENDIX A - OCCUPATIONAL JURISDICTION | 40 |
| APPENDIX B - FLEXIBLE WORK DAY AND WORK WEEK | 44 |
| APPENDIX C - WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS | 45 |
| APPENDIX D - ALCOHOL AND DRUG PROGRAM | 47 |
| | 49 |

** As used herein references to the masculine gender shall also refer to the feminine. **

5

EXHIBIT No. A
PAGE 5 OF 54

# ARTICLE I
## RECOGNITION

### SECTION 1.1. Parties to the Agreement.

This Agreement is made and entered into as of June 1, 2004 between the Plumbing Contractors Association of Chicago and Cook County, solely for and on behalf of each of its individual members, who are duly licensed by law and bonded to engage in the plumbing business, are established in that business, intend to employ not less than two (2) journeymen or one (1) journeyman and one (1) apprentice, and hereafter are collectively referred to as "Employer" or "Employers," and Chicago Journeymen Plumbers' Local Union 130, U.A., which is composed of competent licensed journeymen and apprentices who are duly authorized by law to install and inspect all plumbing work, and which hereinafter is referred to as "Union."

### SECTION 1.2. Recognition Clause.

The Employers recognize the Union as the exclusive collective bargaining agent for all of their employees who perform any of the work applicable within the Fifty-One (51) Articles of Jurisdiction of the United Association as set forth in "Appendix A" to this Agreement for which the Union has been chartered by the United Association within the City of Chicago, Illinois, Cook County, Illinois and vicinity, Will County, Illinois outside the city limits of Joliet, Illinois, as delineated by the United Association in 1972, that part of DuPage County, Illinois known as the Argonne National Laboratories, fifty percent (50%) of the employees employed by the Employers who (whose shop is located in the geographic jurisdiction of Local Union 130) are parties to this Agreement when performing said work in Lake County, Illinois, and wherever else the Union has territorial jurisdiction. The Union recognizes the Plumbing Contractors Association of Chicago and Cook County as the exclusive bargaining agent of its individual member Employers with respect to their employees.

Employees covered by this Agreement shall place in position and connect all materials, appurtenances, devices, fixtures and equipment used in the construction of plumbing as well as handle, unload and distribute all of the above mentioned upon and after its arrival on the job site or premises. When fixtures or equipment are protected by covering during construction, such covering shall be put on and removed and fixtures cleaned by employees covered by this Agreement.

Employees covered by this Agreement shall do all the laying out, cutting and drilling of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with work falling under the jurisdiction of the Union.

EXHIBIT No. A

It is understood and agreed that the foregoing Paragraphs of this Section shall not be construed as limiting the scope of bargaining unit work and that employees covered by this Agreement shall perform all work covered by the Fifty-One (51) Articles of Jurisdiction of the United Association, included in Appendix A which comes within the work jurisdiction for which the Union has been chartered by the United Association.

SECTION 1.3. Union Shop. All journeymen and apprentices who are now in the employ of the Employers covered by this Agreement, and all journeymen and apprentices who are hereafter employed by Employers covered by this Agreement, shall, as a condition of employment, become members of the Union on the earliest date provided by applicable federal law after their employment, or the effective date of this agreement, whichever is later, and shall, as a condition of employment, remain members of the Union during the term of this Agreement.

SECTION 1.4. Subcontracting. No journeyman shall be permitted to subcontract or accept a lump sum payment (lump) for the installation of any work under the jurisdiction of the Union. Parties violating this Section shall be penalized by their respective organizations through the Joint Arbitration Board. The Employers agree not to sublet, lump or contract for labor any work which comes under the jurisdiction of the Union with any member of the Union. Such subletting, lumping or contracting shall be considered a violation of this Agreement and summarily dealt with, in accordance with the grievance procedures of this Agreement. Nothing herein prohibits subcontracting work to MBE, WBE, and DBE as long as those entities are signatory to an Agreement with the Union.

The Employer agrees that in the event the Employer subcontracts any work coming under the provisions of this Agreement to any other person or firm, the Employer shall subcontract the same only to another Employer who is a party to this Agreement. A refusal of employees to render services upon a job site where this subsection is violated, shall not be a violation of this Agreement for any purpose, nor shall such refusal be cause for discharge.

SECTION 1.5. Moonlighting. No employee shall be permitted to work for himself or work after hours or on Saturday, Sunday or Holidays as a self-employed Employer or work for another Employer as a subcontractor. First time violators may be summoned before the Union Executive Board in accordance with the procedures of the United Association Constitution. However, a trial shall be set for repeat offenders. Discharge from employment for repeat offenders will not be construed as a violation of this Agreement.

8

SECTION 1.6. Access to Premises. Duly authorized representatives of the Union or of the Joint Arbitration Board shall, for cause, be allowed access to any job and/or any Employer's place of business during working hours and/or view the Employer or any Employer's duly authorized representative, or inspect in his employ, to determine compliance with the Agreement. Further, it is agreed that job site visits by a union representative are without restrictions but that visits to the shop shall be by appointment if that is the Employer's policy.

Duly authorized representatives of the Fringe Benefit Funds shall be extended the same right, as described above, in order to inspect or audit all books and records of the Employer which pertain or relate to the Employer's compliance with this Agreement. Such records which shall be available for inspection or audit include but are not limited to payroll and time records, time books, payroll and income tax returns, blueprints, contracts, invoices, permits, and documents related to worker's compensation, public liability and unemployment insurance coverage. It is understood and agreed that such visit, inspection or audit shall in no way hinder the progress of the work being performed. Should the Employer refuse to permit such inspection or audit as authorized by this Article, the Employer shall be liable for all costs and legal fees incurred by the Union, the Fringe Benefit Funds or the Joint Arbitration Board in obtaining a court order requiring the Employer to permit such inspection or audit. Such liability shall be in addition to and not in lieu of any relief or remedies available in such proceeding to the Union, the Trustees of the Fringe Benefit Funds or the Joint Arbitration Board under any Illinois or federal law.

SECTION 1.7. Exclusivity. Any agreement entered into between the parties hereto with any other Employer association, Employer or labor organization engaged in the Plumbing Industry shall be brought to the attention of other party and no Agreement which will in any way conflict with the provisions of this Agreement will be made by either party to this Agreement.

# ARTICLE II
# STRIKES AND LOCKOUTS

SECTION 2.1. Lockouts. The Employer agrees that there shall be no lockout of employees during the term of this Agreement.

SECTION 2.2. Employee Job Action. The Union agrees that there shall be no abandonment of work over any matter which is subject to arbitration, provided, however, that the Union may withdraw its members from the employ of, picket and/or use other lawful economic means against any Employer by rea-

9

EXHIBIT NO. A

son of the Employer's non-payment of wages, deductions or contributions or the Employer's failure to obtain, maintain in full force and effect and keep on file with the Union the requisite bond or letter of credit and workers' compensation insurance as more fully provided under this Agreement, notwithstanding that disputes over such matters are subject to arbitration hereunder.

## ARTICLE III
## DISPUTE RESOLUTION

**SECTION 3.1. Grievance Arbitration.** Disagreements or disputes arising under or which involve interpretations of this Agreement, shall be processed and settled by arbitration in the manner set forth in this Article.

**SECTION 3.2. Joint Arbitration Board.** The parties hereto agree that all arbitrable disputes arising between them shall be submitted to a Joint Arbitration Board. The Joint Arbitration Board shall be comprised of ten (10) members, consisting of five (5) members appointed by the Plumbing Contractors Association of Chicago and Cook County and five (5) members appointed by the Union.

The duties of the Joint Arbitration Board shall be to decide on all cases as presented and in conformity with the sections contained in this Agreement. In the event of deadlock by the Board, whereby a decision cannot be rendered, the case will be assigned to an arbitrator mutually agreeable to the Board members. In the event the Board members are unable to agree on an arbitrator, the Board shall give written notice of such inability to agree to the parties to the arbitration. Thereafter, the parties shall request the American Arbitration Association to submit a list of seven (7) arbitrators. The parties shall alternate in striking names from the list until one name remains, with the first strike to be made by the party initiating the arbitration. The person whose name remains shall be the arbitrator. The arbitrator shall have no authority to vary or ignore the provisions of this Agreement. The arbitrator's decision shall be final and binding on the parties to the arbitration. The expenses of the arbitrator shall be divided equally between the parties to the arbitration, except that no employee shall be required to pay any such expense.

The Joint Arbitration Board shall meet no less than twelve (12) times during the calendar year, or as needed, for the purpose of considering current and new business. The reasonable and necessary expenses and costs incurred by the Joint Arbitration Board in performing its functions under this Agreement, as authorized by the Union, The Fringe Benefit Funds and Plumbing Council of Chicagoland who are entitled to payments or contributions under this Agreement, shall be paid by them in proportion to their interests out of the

10

sums collected as liquidated damages pursuant to Article IX, Section 9.8 hereof, to the extent that such sums are available; otherwise such expenses and costs shall be borne and paid for by the parties thereto.

Within a period of thirty (30) days time after the execution of this Agreement, the Joint Arbitration Board shall meet, organize, elect a Chairman, Secretary and Treasurer, and transact any business that may properly come before the Joint Arbitration Board.

**SECTION 3.3. Audits.** In the event that an audit by the accountants for the Union and/or the Fringe Benefit Funds to which the Employer is required to make contributions under this Agreement discloses an alleged underpayment of wages, deductions or contributions required by this Agreement, the Employer shall have ten (10) days after notification by the accountants of such alleged underpayment to pay such delinquencies and any interest and/or liquidated damages due with respect thereto in accordance with Article IX, Section 9.8 hereof, or if the Employer disagrees with the audit or any part thereof, to arrange to meet with the accountants within said ten (10) day period to discuss the area(s) of disagreement and present all records in support of his position(s). If the Employer fails to make the payments shown on the audit, fails to meet with the accountants and produce said records or if the disagreement(s) is not resolved, the matter will be referred by the accountants to the attorneys for the Union and/or the Funds. The attorneys shall attempt to resolve the matter by requesting in writing that the Employer meet with them within ten (10) days. If the Employer fails within ten (10) days of such request to pay such delinquencies and interest and/or damages due in accordance with Article IX, Section 9.8 of this Agreement, to arrange such meeting or fails to appear at such meeting and produce all records and any other evidence, including witnesses, in support of its position(s) at such meeting, or if the matter is not resolved at such meeting, the attorneys will notify the Secretary of the Joint Arbitration Board of the existence of a dispute under this Agreement. No records or other evidence, including witnesses, which the Employer has not produced for the accountants or interest and/or damages due in accordance with Article IX, Section 9.8 of this Agreement, to arrange such Arbitration Board at any hearing before it with regard to such dispute, nor will the Board's proceedings be delayed by the Employer's production of such other or additional records or evidence.

Action will be brought before the Joint Arbitration Board when any audit reveals that a licensed journeyman plumber and/or apprentice or any other party who performs jurisdictional work has not been paid the prevailing rate.

The Fringe Benefit Fund trustees will review uncontested audits for underpayment of wages, and inform the Joint Arbitration Board of each violation.

11

EXHIBIT No. _____ A
PAGE 8 OF 26

contract violation other than one which is subject to Section 3.3 of this Article, immediately above, a Business Representative or other representative desig- nated by the Union will notify the Employer of such alleged violation and at- tempt to resolve the matter informally. If the matter is not resolved or if the Employer refuses to meet in a reasonable and timely fashion with the Union's Representative to resolve the matter, said representative shall notify the Secre- tary of the Joint Arbitration Board in writing of the existence of a dispute.

It shall be considered a violation of this Agreement for any plumbing contractor to intentionally omit backing supports for plumbing fixtures and ac- cessories from a bid package. Further, any plumbing foreman or superintendent who wilfully refrains from directing journeymen or apprentices under his/her charge to install all backing and accessories related to a plumbing system shall be found in violation of this Agreement. Both the Employer and the employee may be summoned before the Joint Arbitration Board for appropriate action.

If a plumbing contractor submits a bid in accordance with the above, and it is not accepted, there will be no action taken against the contractor or his employee by the Union.

SECTION 3.5. Hearing. After receipt of a notice of dispute under Sec- tion 3.3 or 3.4, above, of this Article, the Secretary of the Joint Arbitration Board shall send the Employer written notice of the date, time and place of a hearing before the Board with respect to the dispute, together with a copy of the written notice of the dispute. The Board members present at the hearing shall hear the evidence in the case and shall render a decision which it will issue in writing over the signature of the Secretary of the Board. Said decision shall be final and bind- ing on the parties to this Agreement. The Secretary of the Board will make or direct the making of the official minutes or transcription of the hearing. No other recording of the hearing is permitted. The Employer must appear at the hearing. Appearance through an outside representative only does not constitute the Employer's appearance. If the Employer is unable to so appear at the date, time and place set forth in the notification of hearing, he shall promptly notify the Board's Secretary in writing of the reasons therefore and request a postponement. Such request for postponement must be received by the Secretary no later than 5:00 p.m. of the fourth (4) business day before the time scheduled for the hear- ing. A request for a postponement will be granted only for good and sufficient reasons. No Employer will be granted more than one (1) postponement in the same case. If the Employer fails to appear at a scheduled hearing or at a hearing postponed to a later date at his request or if an Employer's request for postpone- ment is not received by the Board's Secretary in the timely manner as set forth

hereinabove or is denied, the Board members shall hear the case at the appointed time notwithstanding the Employer's failure to appear and shall decide the case upon the evidence before it in the same manner as set forth hereinabove, with decision shall be final and binding on the parties to this Agreement.

SECTION 3.6. Powers of the Joint Arbitration Board. The Joint Arbitration Board shall have full power to enforce this Agreement against the of- fending employees and/or Employers by appropriate penalties or remedies in- cluding, without limitation, fines, replacement of defective work without pay, or other appropriate sanctions. The Joint Arbitration Board shall have full power to summon Employers , the Union and employees covered by this Agreement against whom charges of violations have been preferred and to summon Em- ployers and employees covered by this Agreement to testify in any manner before the Joint Arbitration Board. Such summons shall be served by registered or certified mail by the Secretary of the Joint Arbitration Board before which such dispute is pending. Such summons may compel the production of any document or the testimony of any witness which the Joint Arbitration Board deems relevant to the resolution of the case. Failure of the Employer or em- ployee to respond when so summoned, except for valid reason, shall subject him or them to the payment of any cost incurred by the Joint Arbitration Board in connection with such failure or to respond.

Decisions of the Joint Arbitration Board shall be by majority vote. A majority shall consist of fifty percent (50%) plus one (1) of those members of the Joint Arbitration Board present and voting.

SECTION 3.7. Indemnification of the Joint Arbitration Board. The parties hereto agree that the members of the Joint Arbitration Board represent- ing either or both of them in proceedings before such Joint Arbitration Board under the provisions of this Agreement shall be indemnified as Joint Arbit tion Board members against judgment, court costs and attorney's fees incurred and/or paid by the Joint Arbitration Board members in defending any suit or legal proceeding brought against the Joint Arbitration Board members in their respective capacity to enforce any liability or alleged liability on account of any loss, claim or damage which, if established against the Joint Arbitration Board members, shall constitute a valid and collectible loss sustained by either appropriate party under the terms of this Agreement.

In the event of any other suit or action against a member or members of the Joint Arbitration Board for or on account of an act performed pursuant to the authority provided for in this Agreement, the Joint Arbitration Board may draw upon any funds which are in its hands or under its control subject to such

EXHIBIT No.
PAGE 9 OF 50

rules and provisions as the Joint Arbitration Board may establish relating to the disposition of such funds.

In consideration of such indemnity, the Joint Arbitration Board members shall promptly give notice to the Joint Arbitration Board, and the Union and the Plumbing Contractors Association of Chicago and Cook County of the institution of any such suit or legal proceeding. At the request of the Union or the Plumbing Contractors Association of Chicago and Cook County, the Joint Arbitration Board members shall furnish copies of all pleadings and other papers therein, and at the election of either the Union or the Plumbing Contractors Association of Chicago and Cook County shall permit either or both to conduct the defense of such suit or legal proceedings in the name of the Joint Arbitration Board by and through attorneys of their own selection. In the event of such election the named Joint Arbitration Board member or members shall give all reasonable information and assistance other than pecuniary which shall be deemed necessary to the proper defense of suit or legal proceeding.

Joint Arbitration Board members found guilty of fraudulent or illegal conduct shall not be indemnified under this Section.

## ARTICLE IV
## WORKING CONDITIONS

**SECTION 4.1. General Policy.** The Employers agree to make all reasonable provisions for the safety and health of their employees during the hours of their employment. The Union agrees to promote in every way possible the realization of the responsibility of the individual employee with regard to preventing accidents to himself and to his fellow employees during the hours of their employment.

Any person who is, will be or was required to attend plumbing classes two evenings each week for 24 consecutive months, as a condition of membership in the Union, is mandated to complete training in HAZCOM and OSHA safety classes, or to produce proof such training has been completed. Such persons not fulfilling this obligation will not be referred out to work.

**SECTION 4.2. Reporting Accidents.** It shall be the duty of the employee in charge to report personally to both the Union and the Employer accidents involving personal injury which may occur on the job where they are employed.

14

---

**SECTION 4.3. Employer Insurance.** Employers shall carry sufficient Workers Compensation, public liability and unemployment insurance, together with occupational disease insurance. The Employer shall provide the Union with a copy of the insurance certificates or such other proof that it has obtained and maintains in full force and effect such insurance coverages.

**SECTION 4.4. Unsafe Working Conditions.** Employees covered by this Agreement shall not work under any of the following conditions:

1. Where the equipment, tools, ladders and/or job conditions are judged to be unsafe by the Building Trades Safety Committee.

2. For any Employer who does not carry a bond or meet the other obligations as provided for in Section 6.8 of this Agreement a have sufficient Worker's Compensation Insurance and State Unemployment Insurance. (A copy of these coverages shall be on file in the Union Office.)

3. 125 feet above ground level unless an operable man lift is provided to transport the employee to or above that level.

4. On any job not in conformity with the safety standards promulgated pursuant to the Occupational Safety and Health Act.

5. For more than one (1) Employer at the same time.

The Union reserves the right to have its Business Representatives witness all tests of any plumbing systems.

**SECTION 4.5. Plumbing Codes.** The Employer shall comply with all plumbing codes of the various municipalities in which the work is being installed. Any violation of said plumbing ordinances shall be reported to the office of the Business Manager of the Union.

**SECTION 4.6. Older Workers.** At least one out of every five (5) men working in the shop shall be older men.

**SECTION 4.7. Non-Discrimination Policy.** Each Employer bound under the terms of this Agreement shall promulgate and enforce policies forbidding any sexual harassment or discrimination based on race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service.

EXHIBIT
A
57
PAGE

15

**SECTION 4.8. Staffing.** In order to provide for the safety of their employees, the Employer agrees that at no time shall there be less two (2) journeymen, or one (1) journeyman and one (1) apprentice, working with any one (1) building of any job or job site (except, however, that this provision shall not apply to jobbing work as the term is generally used in the industry). The Employer shall be the sole judge of the number of additional men required.

All Employers who do not employ two (2) employees, as stipulated in the area agreement, will be required to meet with the Local Union 130 Business Manager as soon as possible. The Employer will be told that he is required to comply with the terms of the agreement (with the understanding that temporary latitude may be allowed in a depressed economy).

However, during the times that the Employer is not in compliance with the Agreement:

a. Each week the Employer is required to send a written report to the Union of all jobs on which his company is working.

b. His company will be audited every six (6) months and at year end.

c. Any and all of his Employees will submit an affidavit annually stating that, "to the best of his (the employee's) knowledge, he performed all the jurisdictional work completed by the shop".

d. Progress and status of these shops will be reported through the Joint Arbitration Board and violation of the agreement may result in a fine of the value of wages and fringes for all hours worked by others, other than the Journeyman.

The Union agrees to supply skilled men to the extent that they are available, to the members of the Plumbing Contractors Association of Chicago and Cook County, it being understood that the Union shall furnish men to all other Employers with whom it has Agreements governing wages and working conditions. When employment opportunities exist within the industry, the Union will refer men only to Employers with whom the Union has signed Agreements.

The Metal Trades Division of the Union is composed of members employed by signatory contractors to perform tasks not requiring a plumber's license or other tasks described as non-jurisdictional work.

Wages for these employees are determined by the plumbing contractor, but minimally will be equal to those of a first year apprentice. Fringe benefit payment is optional.

16

A contractor employing at least two (2) building tradesmen may re-...st one metal tradesman for performance of non-jurisdictional work. A second metal tradesman may be requested by a contractor employing at least eight (8) building tradesmen. Thereafter, additional metal tradesmen may be referred to a contractor employing at least twelve (12) building tradesmen. At no time may the number of metal tradesmen exceed the number of apprentices in a shop.

An employee in the Metal Trades Division may, upon the request of the Employer, enter the Apprentice Program provided the requirements of the Apprentice Committee are satisfied. Credit for hours worked as a metal tradesman toward hours required for completion of an apprenticeship will be granted as determined by the U.S. Department of Labor, Office of Apprenticeship Training, Employer and Labor Services (OATELS).

The parties agree that, effective June 1, 2001, total hours worked by all metal tradesmen will be reported monthly. The hours of those not receiving benefits will be shown on a supplement sheet attached to the contribution report. Only those hours reported to the Union will be considered for credit toward fulfillment of the apprentice requirements.

**SECTION 4.9. Pipe Cutting.** All sizes of pipe shall be cut and threaded and/or welded and fabricated by employees covered by this Agreement. There shall be no restrictions on the use of power equipment. Where it is impractical or a hardship to cut, thread, or weld pipe on the job in the opinion of the Employer involved, such pipe may be cut, threaded or welded and fabricated in the shop. Flashings and air chambers shall be made on the job or in the shop by journeymen plumbers and/or apprentices covered by this Agreement. Such cutting, threading, and/or welding, fabrication and making of flashings and air chambers shall be performed by journeymen and apprentices of the Union.

All pipe, hanger rod and fabricated piping of any size which is cut in the shop of the Employer or in any approved Employer's shop covered by this Agreement shall be labeled by the journeymen performing the work. The journeymen who obtain the labels from the office of the Business Manager of the Union shall be held accountable for said labels.

All sizes of pipe shall be cut and threaded by employees covered by the Collective Bargaining Agreement of Local Union 130, except for pipe nipples which are defined as lengths of 10 inches or less.

**SECTION 4.10. Specifications.** Specifications and contract information forms shall be distributed by the Union to all Employers. The Employer

17

EXHIBIT No. A
PAGE 11 OF 56

shall complete these forms for all jobs above Two Hundred Thousand Dollars ($200,000.00) for which he has received a signed contract and within ten (10) days after receipt of such signed contract shall forward a copy of the form to the office of the Business Manager of the Union. Intentional falsification of information on these forms shall constitute a violation of this Agreement.

SECTION 4.11. Plumbing Supervision. It is understood that for the purpose of maintaining a proper record and check on all work which comes under local ordinances and/or the Illinois Plumbing License Law such work should be done under the supervision of a licensed and bonded Plumbing Contractor, and by licensed journeymen and apprentices and to protect the public against unsanitary installation by unqualified men, it will not be considered a violation of this Agreement for any journeyman to adhere to the rules of the Union. Nothing shall be incorporated in the "Working Rules" of the Union that conflict in any way with the provisions of the Agreement.

SECTION 4.12. Rule Violators. Any employee having charge of work who is taken out of a shop for violation of Union rules shall be required to remain one (1) working week of forty (40) hours in an advisory capacity if the Employer so desires, the case to be entitled to a hearing as provided in Article III of this Agreement.

SECTION 4.13. OSHA and HAZCOM Training. The Employers wish to have referral of Employees with certificates of completion of HAZCOM and OSHA education courses.

The Union and Contractors will require that all members be certified in HAZCOM and OSHA and will conduct classes in HAZCOM on three (3) nights at the Union Hall in a three-week period, as necessary. If feasible, the same will be done for OSHA. Otherwise members will have to get certified through night school. It will not be a violation of this Agreement for any Employer to reject a Union member for employment if he lacks these certifications. Classes in both OSHA and HAZCOM will be offered regularly at the Plumbing Industry Center.

The Employers will provide the Union with names of Employees who have already been certified so that the certification information can be retained and updated in computerized form.

A referral slip, arrived at from a computerized data base, will reflect certification in these areas.

Jobbing and service repair class, to be taught at day and night school, will be jointly developed to help in this market recovery or retention effort.

18

$0.01 per hour will be contributed to a separate, dedicated, J.A.C. account to be used exclusively for an OSHA and HAZCOM training program. This training program will be co-sponsored by the Plumbing Contractors Association. Any registration fee, if required, will be paid by the Employer.

SECTION 4.14. OSHA and HAZCOM Violations. A written citation will be issued by the Employer to the employee for each violation of OSHA and HAZCOM requirements and a copy will be sent to the Union. An employee can be terminated immediately for wilful violations of OSHA and HAZCOM standards.

The offending employee will be summoned before the Union Executive Board upon receiving a third citation and appropriate action will be taken. He will also be apprised that upon receipt of a fourth citation the matter will be turned over to the Joint Arbitration Board for disposition that may result in the employee sharing in the amount of the Employer's fines.

SECTION 4.15. Automobile Not Required. No journeyman shall be required to furnish his automobile or any other conveyance for any purpose other than to transport himself to and from the job.

SECTION 4.16. Work Connected Expenses. All expenses incurred by an employee in telephoning or otherwise connected with his work shall be paid by the Employer.

SECTION 4.17. Travel Expenses. There will be no travel expense for work performed within the jurisdiction of the Union except when prefabrication of work is performed outside the Union's jurisdiction. A journeyman so employed in a fabrication shop will be reimbursed in the same amount per mile as established from time to time by the Internal Revenue Service for determining the standard mileage rate method of calculating deductible employee automobile business expenses. Said reimbursement shall be calculated from the job site to the place of fabrication and back to the job site. However, if any Employer provides transportation for employees working under this Agreement to a fabrication site to perform work, then no travel expense shall be assessed or charged against such Employer.

SECTION 4.18. Tool Provision. The journeymen shall furnish small pliers and rule. All other tools shall be furnished by the Employer. No journeymen shall be allowed to carry tools or materials belonging to the Employer in the journeymen's automobile, with one exception; that exception is that an employee whose automobile is covered by his own automobile insurance policy may voluntarily agree to carry hand tools, including saws all, electric drill (1/2"

19

EXHIBIT NO. A
PAGE 12 OF 56

or smaller), hand torch without tank, radio (communication type), and pipe wrenches not to exceed 18". Should an employee voluntarily agree to carry any hand tools on behalf of his Employer, the Employer shall pay any additional insurance cost necessary to make the employee's existing automobile insurance coverage apply to this business use. The Employer may keep a record of his tools to guard against loss or damage to his equipment. Journeymen who receive tools from their Employers shall be responsible for such tools and make good for any tools lost by said journeymen. The Employer will countersign the receipt and provide the employee with a copy. Upon return of the tools both parties will sign off on a dated receipt indicating which if not all the tools have been returned. The Union will require journeymen to replace or pay for lost or missing tools furnished by their Employer and for which the latter holds a receipt from his journeymen. Should a dispute arise with respect to compliance with the requirements of this Section, the matter shall be promptly brought before the Executive Board of the Union for resolution. If a satisfactory resolution is not obtained before the Executive Board, then the matter shall be referred to the Joint Arbitration Board for final disposition.

SECTION 4.19. Clothing Provision. When welders are employed on a job, the Employer shall furnish protective clothing, which shall include sleeves, aprons and gloves, welding hoods, goggles, etc. The welders shall be held responsible for this clothing, except for wear and tear or if stolen from the Employer's job location.

## ARTICLE V
## HOURS AND OVERTIME

SECTION 5.1. Work Day and Work Week. Eight (8) hours shall constitute a day's work as follows: 8:00 A.M. to noon and 12:30 to 4:30 P.M. on Monday, Tuesday, Wednesday, Thursday and Friday making a forty (40) hour week straight time. The workweek shall be limited to forty (40) hours per week and and all overtime shall be only with the prior approval of the Joint Arbitration Board, except in the case of actual breakdowns of installed work falling within the jurisdiction of the Union. Such breakdowns shall be reported to the Joint Arbitration Board as soon as possible, but in no event later than 4:30 P.M. of the following business day. With the approval of the Joint Arbitration Board, the 8:00 A.M. starting time and 4:30 P.M. quitting time, specified above, may be adjusted by starting no earlier than 6:00 A.M. and no later than 9:00 a.m. with an appropriately adjusted quitting time, e.g. 6:00 A.M. to 2:30 P.M., 9:00 a.m. to 5:30 p.m. In the case of an earlier adjusted starting time, employees shall be entitled to one-half (1/2) hour lunch break, no later than five (5) hours after the adjusted starting time.

20

For employees engaged in residential jobbing and repair work in a residential building of no more than three (3) stories where such work is billed to the customer on an hourly basis and not on a contract basis, any five (5) days with the exception of Sunday may constitute a workweek. The workday shall consist of eight (8) hours from 8:00 A.M. to 4:30 P.M., provided however, that the earlier starting time as provided for above is permitted. Any hours worked in excess of eight (8) hours per day shall be paid at time and one-half. All hours worked on the sixth (6th) day in any workweek other than a Sunday or a legal holiday shall be paid at time and one-half. All hours worked on Sunday or a legal holiday as provided for in Section 5.4 of this Article V shall be paid at double time. The sixth (6th) working day cannot be used as a make up day. Except as specifically permitted by Appendix B to this Agreement governing the circumstances under which an Employer may schedule flexible hours, employees covered by this Agreement shall work the standard work day and standard work week at straight time rates and be paid for overtime work at the overtime rates as required by this Article.

Saturday may be used as a make up day subject to the following conditions:

a. The time being made up is due to a loss of hours related to weather conditions.

b. Prior permission to work the make up day must be obtained from the Joint Arbitration Board.

c. The decision by the employee to work must be voluntary.

Four ten hour days may constitute a normal work week for specific projects. Prior approval must be received from the Joint Arbitration Board before a contractor may schedule these hours for a project. Approval to work this schedule will be granted for a maximum of sixteen working days. Additional days may, upon request, be granted by the Board if it is deemed necessary.

In general, approval will be considered only for work where a regular eight (8) hour workday may impede the progress of the job, resulting in an undue burden on the owner of the property.

If more than one crew is needed to perform the work, all crews will be scheduled to work the same four (4) days, Monday through Friday. Starting one crew on Monday and another on Tuesday is not permissible. The rate of pay for a schedule of four (4), ten (10) hour days shall be at the regular rate of pay for any ten (10) hour period worked within the approved starting times of 6:00 a.m. to 9:00 a.m. and corresponding quitting times of 4:30 p.m. and 7:30 p.m. All

21

EXHIBIT NO. ___
PAGE 13 OF 56

other times outside these approved hours will be paid at the rate of time and one half.

SECTION 5.2. Overtime. In the event of overtime work, as provided in Section 5.1 above, such overtime work shall be performed at the rate of time and one-half if such overtime work occurs during the period from Monday through Saturday; if overtime work occurs on a Sunday or a legal holiday, as set forth in Section 5.4 of this Article, such overtime work shall be performed at double time.

It is the intention of the parties to this Agreement that offers by Employers of overtime or other benefits for purposes of "pirating" employees covered under this Agreement, shall be deemed to be violations of this Agreement and such Employer shall be subject to the sanctions as set forth in Article III, Section 3.6 of this Agreement

All members of the Union that work on jobs that extend into scheduled overtime shall be given preference to work the overtime. Absenteeism during the regular work week may be cause for an employer to deny the employee future scheduled overtime.

SECTION 5.3. Show Up Pay. Any employee covered by this Agreement reporting to work upon order of any Employer who is a party to this Agreement and not put to work for any reason, * except fire, accidents, other unavoidable causes, or failure to dress properly for the type of construction on which such employee will be working, shall receive two (2) hours' pay for the time lost.

*Any employee covered by this Agreement reporting for work upon order of any Employer who is a party to this Agreement and not put to work because of weather conditions, shall receive one (1) hour of pay for the time lost unless he has been previously notified not to report to work. In order to obtain the one (1) hour's pay, the employee must remain on the job for that period of time.

SECTION 5.4. Holidays. The following days, or the day on which they are legally celebrated, shall be recognized as legal holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day. No work shall be done on these days, except to protect life and property. Veteran's Day shall be included as a recognized holiday if adopted as such by a majority of unions in the Chicago and Cook County Building Trades Council. A holiday falling on a Saturday will be celebrated on that day. A holiday falling on a Sunday will be celebrated the next day, Monday.

22

SECTION 5.5. Shift Work. Shifts will not be worked without prior approval of the Joint Arbitration Board. However, when shift work is performed, it must continue for a period of not less than five (5) consecutive working days. If only two (2) shifts are worked, the second (2nd) shift may be for any designated eight (8) hour period beginning after the conclusion of the first (1st) shift, but the starting time selected for the second (2nd) shift is to remain the same for the duration of the shift period.

The hourly rate of employees on the second (2nd) and third (3rd) shifts shall be fifteen percent (15%) over and above the basic hourly rate.

No interruptions shall occur in shift time except lunch and personal breaks.

## ARTICLE VI
## WAGES

SECTION 6.1. Wage Rates and Fringe Benefits. The Employer hereby agrees to employ journeymen plumbers at the Union prevailing wage rates and pay the fringe benefit contributions set forth or to be determined in the manner set forth in Appendix C to this Agreement. The rates and contributions set forth therein shall be deemed the standard rates to be strictly adhered to as of the effective dates shown.

No Employer shall pay wages in excess of the rates set forth or to be determined in the manner set forth in Appendix C. No person having any ownership interest in any Employer shall work with the tools of the trade and any such work shall be considered a violation of this Agreement for which, in addition to other remedies for such violation, the Employer shall pay contributions to the Fringe Benefits (Article IX) on all hours of work in violation of this Agreement. No journeyman shall be permitted to work with anyone working with the tools of the trade who has an ownership interest in any Employer which does any work within the jurisdiction of work covered by this contract.

Any journeyman member of the Union who is not licensed by the City of Chicago or the State of Illinois shall be issued an apprentice license. The newly organized journeyman will be given twelve (12) months in which to obtain a plumbing license or future wage increases will be withheld until a rate equal to 80% of the then current journeyman rate is reached. The journeymen wage rate will be reinstated upon receipt of a current journeyman license. Appeals due to extraordinary circumstances will be referred to the Joint Arbitration Board. An apprentice with a minimum of 4 ½ years credit who has success-

23

fully obtained either a City of Chicago or State of Illinois plumbing license shall be paid the then current journeymen wage.

**SECTION 6.2. Foreman's Wage.** All men who supervise and inspect work and/or who are in charge of any work that requires more than three (3) journeymen and/or apprentices shall be paid foreman's scale. The Employer shall select said man, who shall at all times be subject to orders from the Employer or his Superintendent. This Section does not apply to repair work.

Foreman rate of pay shall prevail for any journeyman who is assuming full responsibility for any job when such responsibility is of a supervisory nature in representing his Employer, as described in Section 7.1.

**SECTION 6.3. Apprentice's Wage.** It is understood and agreed that the wages of apprentices learning the plumbing trade and the fringe benefits to be paid on their behalf shall be as set forth in the manner as set forth in Appendix C as of the effective dates shown thereon.

**SECTION 6.4. Pay Day.** Employee members of the Union shall be paid once each week, on the job, not later than the quitting time of the regular established pay day of the Employer. In no event, may the regular pay day be more than four (4) working days after the day on which the Employer's work week ends. If the regular pay day should fall on the same day as a legal holiday (as set forth in this Agreement), the employee shall be paid on the workday immediately preceding the legal holiday.

**SECTION 6.5. Wage Payment.** No member shall accept wage payment in cash, but shall only accept payment by check, either paid directly to the employee or by direct deposit to the employee's designated bank account, so that a full and complete record of wages, withholding taxes, social security, pension and welfare contributions and any other deductions required by this Agreement will be readily available.

Any Employer who fails to have sufficient funds in the bank to cover all paychecks issued to employees will be denied the privilege of paying by the normal payroll checks, and must pay all future payroll by certified check only until such time as the Employer gives the Employer written notice that it is satisfied that the Employer is financially responsible and, therefore, able to resume payment of payroll by non-certified check. In the event of an Employer's failure to pay the wages provided for in this Agreement or failure to comply with the terms of this Section 6.5, the Union shall have the right without giving notice to withdraw its members from the employ of, to picket and/or take other lawful economic action against such Employer in order to compel the payment

24

of wages or compliance with this Section 6.5, such withdrawal of employees, picketing and/or lawful economic action shall not be considered a violation of this Agreement on the part of the Union and shall not be a subject of arbitration. If employees are withdrawn from any job or if the Union strikes in order to compel an Employer to fulfill its obligations under this Section, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or any action taken by the Union under this Section.

**SECTION 6.6. Union Dues Deduction.** The Employer agrees that each payroll period it will deduct the working dues owed to the Union for said payroll period from the wages of employees who are covered by this Agreement and who have authorized such deductions, by an authorization which is in accord with applicable law. The Employer shall remit to the Union the amount so deducted at the same time and accompanying the Savings Plan deductions and contributions to the Pension Fund, Welfare Fund, Educational Fund, Plumbing Council, and Legal Fund. All such remittances shall be made by a single check payable to the L.U. 130 U.A. Contribution Account with the report of hours devised by the Union showing the allocation of each remittance.

**SECTION 6.7. Pay at Separation.** If an employee is to be laid off or discharged, except for cause, he shall be so notified and paid off in full, at least one-half (1/2) hour before the established quitting time. Should the Employer require the employee to be laid off or discharged to receive his check at the office of the Employer, the employee shall be allowed two (2) hours at regular pay. Should the employee not be paid promptly upon arrival at the office of the Employer, he shall be paid at the regular hourly rate of pay for all time in waiting. Employees covered by this Agreement, who leave an Employer of their own volition, may wait until the regular pay day of the current week to collect wages due.

**SECTION 6.8. Bond Requirement.** Each Employer shall be required to obtain, maintain in full force and effect and keep on file with the Union a bond to secure all monetary obligations required of the Employer by this Agreement pursuant to the following schedule:

| Number of Employees | Amount of Bond |
| --- | --- |
| 0 to 2 | $15,000 |
| 3 to 5 | $30,000 |
| 6 to 7 | $45,000 |
| 8 to 10 | $60,000 |
| 11 to 12 | $75,000 |
| 13 or more | $90,000 |

It is agreed that the period of liability pursuant to the bond will cover the unpaid wages and expenses accrued within one hundred and twenty (120) days immediately prior to the last date of employment of each employee. The period of liability for payroll deductions and employee contributions required under the terms of the Agreement will be one hundred eighty (180) days immediately preceding the last date of employment of each employee.

Each Employer will obtain the bond required by this Section with a minimum rating of A+ according to the Best or Moody rating service from a broker designated by the Plumbing Contractors Association with agreement from the Union. The rate or cost of the required bond will be determined by such broker, but in no case will the cost be more than that quoted by another broker for a comparable bond.

In lieu of such bond, the Employer may obtain a bank letter of credit to secure such obligations in such form and on such terms as determined by the Union. This letter of credit shall be held in the Union's possession. An Employer who is unable to obtain such bond or letter of credit shall so certify in writing to the Union and make payment of wages and all deductions and contributions required by this Agreement on a weekly basis by cashier's check.

In the event of an Employer's failure to comply with the obligations imposed by this Section, the Union shall have the right to withdraw its members from the employ of, to picket and/or to use other lawful economic means against such Employer in order to compel compliance herewith. Such withdrawal of employees, picketing or other lawful economic actions shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration. In no event, will members of the Union be permitted to work for an Employer who does not fulfill the requirements and obligations set forth in this Section.

Further, an Employer who fails to comply with the obligations imposed by this Section shall also be liable to the employees, Union, Trust Funds and other entities, as the case may be, for the payment of liquidated damages in the amount(s) equal to the monetary obligation(s) due and owing them or any of them which the bond or letter of credit required by this Section are designed to secure. The Joint Arbitration Board shall have the power to award such liquidated damages in any proceeding before it which involves a violation of this Section, and such liquidated damages shall be in addition to any and all remedies available for violations of any other provision of this Agreement or under any law of the State of Illinois or the United States.

**SECTION 6.9. Prevailing Wage Payment.** Any member of another local affiliated with the U.A. working for a contractor signatory with Local Union 130, U.A., will be paid the prevailing rate of Local Union 130, U.A., as well as any member of Local Union 130, U.A. working in the jurisdiction of another Local Union for a contractor signatory with Local Union 130, U.A.

**SECTION 6.10. Retirement Savings Fund ( 401(k) Plan).** The Employer shall deduct from the wages (before taxes) of each employee subject to this Agreement who has enrolled in the Plumbers' Retirement Savings Fund (the "401(k)Plan") the minimum sum of one dollar and fifty cents ($1.50) per hour for each hour worked by journeymen and a minimum of one dollar ($1.00) per hour for each hour worked by fourth and fifth year apprentices. An employee can direct deduction of more than the base contribution rate of $1.50/ $1.00 per hour, in increments of fifty cents ($.50), to the 401(k) Plan but not more than the maximum amount per hour established from time to time by the Board of Trustees of the 401(k) Plan. The employee should not direct more than the annual limit established by the Internal Revenue Code. The 401(k) Plan deductions shall be withheld from the employee's weekly wages and are due as provided in Section 9.8 of this Agreement. It is expressly understood and agreed that neither the Employer nor the Union shall have any right, title, interest, or power over such money so forwarded, but that all money so forwarded, deposited or accrued shall at all times remain the exclusive property of the employee from whose pay such deductions are made.

An employee enrolled in the 401(k)Plan may also elect to participate in the Savings Plan as set forth in Section 9.1 of this Agreement.

First, second and third year apprentices covered by this Agreement shall be exempt from this Section 6.10.

For each employee electing to participate in the 401(k) Plan each Employer:

a) adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing the Retirement Savings Trust Fund, and any amendments made thereto as though the Trust Agreement was set forth in full;

b) ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of the Retirement Savings Trust Fund, appointed from time to time in accordance with the terms of the Retirement Savings Trust Fund Trust Agreement; and

c) agrees to contribute Pay Deferral Amounts elected under this Section 6.10 into the Retirement Savings Trust Fund, and to be bound

EXHIBIT No. A

PAGE 16 OF 56

by all amendments hereinafter made as if the Employer had signed the original of said Trust Agreements and any Amendments from time to time or to be made.

The manner and frequency of an employee's deferral election is governed by the Plan Document of the Retirement Savings Trust Fund.

## ARTICLE VII
## FOREMEN

SECTION 7.1. Foreman's Duties. A foreman shall represent his Employer on a project to the limit of authority prescribed and given by his Employer. Within that authority he shall perform the following duties as applicable for the orderly and efficient installation of the work:

1. Supervise and coordinate the work and activity of the men;
2. Plan and schedule the work, including the necessary layout;
3. Coordinate his work with that of other trades in an orderly fashion;
4. Anticipate and arrange for the delivery of tools and materials without undue frequency;
5. Represent the Employer at job meetings and safety meetings and implement results consistent with the Employer's policy;
6. Reassign employees for the best use of their abilities, when necessary;
7. Attempt to resolve grievances at an early stage;
8. Assemble and verify the time sheets in the form prescribed by the Employer;
9. Update as-built drawings and instructions for the maintenance of equipment and the operation of systems;
10. Keep job log and transmit to the Employer at the conclusion of the work;
11. Stress safe working habits, and supplement all activity in Article IV of this Agreement; and
12. Give notice to the Local Union that the project or job has begun.

A foreman may supervise journeymen and/or apprentices on more than one building provided it is considered within the job site and covered by the same contract and Employer. If it is necessary for an employee covered by this Agreement to supervise work on separate job sites covered by a separate contract, he shall be rated as a Superintendent.

**SECTION 7.2. Foreman's Schedule.** The following scheduling shall determine the supervision on all jobs:

| Journeymen & Apprentices | Sub-Foremen | Foremen | Superintendent |
| --- | --- | --- | --- |
| 4 to 9 | 0 | 1 | 0 |
| 10 to 18 | 1 | 1 | 0 |
| 19 to 25 | 2 | 1 | 1 |
| 26 to 35 | 2 | 2 | 1 |
| 36 to 45 | 3 | 2 | 1 |

## ARTICLE VIII
## APPRENTICES

Employers engaged in residential work related to the service, maintenance and construction of single family residences, garden type and walk-up residential apartments of three levels or less as well as Employers engaged in commercial and service maintenance work as described herein shall be entitled to employ one apprentice for each journeyman only on that type of work subject to the following conditions:

a. Commercial work for this purpose shall be defined as interior plumbing work not to exceed $30,000 (the value of which does not include site utilities).

b. At no time may the number of apprentices in the contractor's employ exceed the number of journeymen.

c. All apprentices who have completed at least three years of training may work alone when engaged in residential and commercial service and maintenance work only. Otherwise, apprentices shall work under the normal conditions defined in this Agreement.

d. Apprentices will be supplied as needed to satisfy the "1 for 1" Agreement. The contractors will maintain the employment of apprentices as long as they have a sufficient workload (this does not include employment for short periods of time) and upon laying off men, will lay off one (1) Apprentice for each Journeyman (in shops where the "1 for 1" ratio is maintained).

e. Fourth and fifth year apprentices will be required to attend additional continuing education courses as prescribed by the Joint Apprentice Committee. Wages will not be paid for attendance. However, a fifteen dollar ($15.00) per day per diem will be paid by the Employer to offset transportation and meal expenses.

EXHIBIT NO. A
PAGE

## ARTICLE IX
### FRINGE BENEFITS

**SECTION 9.1. Savings Plan.** The Employer shall deduct from the wages, after taxes, of each employee subject to this Agreement and not enrolled in the 401(k) Plan (see Section 6.10 of this Agreement) the sum per hour set forth or to be determined in the manner set forth in Appendix C for each hour worked. These deductions shall be withheld from the employee's weekly wages and shall be forwarded by the Employer with the report of hours required under Section 6.6 of Article VI for deposit in a bank chartered by the State of Illinois to be designated by the Union, for crediting to the individual account of such employee under the Chicago Journeymen Plumbers' Local Union 130 Savings Plan. It is expressly understood and agreed that neither the Employer nor the Union shall have any right, title, interest or powers over such money so forwarded, but that all money so forwarded, deposited or accrued shall at all times remain the exclusive property of the employee from whose pay such deductions are made. An employee may elect to increase the minimum Savings Plan deduction, after taxes, in fifty cents ($0.50) increments. An employee enrolled in the 401(k) Plan may elect to fully participate in the Plumbers' Savings Plan to the same extent as if not enrolled in the 401(k) Plan.

First (1st), second (2nd) and third (3rd) year apprentices, covered by this Agreement shall be exempt from this Section 9.1.

**SECTION 9.2. Health & Welfare and Pension Plan.** Effective as of the dates set forth in Appendix C, each Employer will contribute the sums per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Plumbers' Health and Welfare Fund, Local 130, U.A. and for each hour so worked to the Plumbers' Pension Fund, Local 130, U.A.

Contributions in themselves are deemed as providing coverage as may be required by the law. Eligibility for coverage is controlled by the trust and is another matter apart and separate.

Each Employer adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing:

    a.  The Plumbers' Pension Fund, Local 130, U.A., being that Trust Agreement dated May 14, 1953; and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

    b.  The Plumbers' Welfare Fund, Local 130, U.A., being that Trust Agreement dated October 3, 1950, and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

    c.  The Employer ratifies, accepts and irrevocably designates as its representatives the Employer trustees of each of said Funds who from time to time shall be appointed as such in accordance with the terms of the Trust Agreements.

    d.  The Employer agrees to make the contributions required by this Section 9.2 and Appendix C into the Funds established and governed by said Trust Agreements and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreements and any amendments from time to time or to be made.

Any Contractor employing at least two journeymen or one journeyman and one apprentice as permitted may apply for participation in one or more of the Benefit Funds upon signing a Participation Agreement If the Contractor is accepted, contributions must be paid on the basis of forty (40) hours each week for the duration of this Agreement.

Contributions to the benefit funds on behalf of members working within the jurisdiction of Local 93 are capped at forty hours.

**SECTION 9.3. Apprentice Trust Fund.** Effective as of the dates set forth in Appendix C, each Employer will contribute the sum per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Trust Fund for Apprentice and Journeymen Education and Training, Local Union 130, U.A.

Each Employer adopts and agrees to be bound by the terms and conditions of the Agreement establishing and governing the Trust Fund for Apprentice and Journeymen Education and Training, Local 130, U.A., being that Trust Agreement dated June 1, 1965, and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of said Fund who from time to time shall be appointed as such in accordance with the terms of the Trust Agreement. The Employer agrees to make the contributions required by this Section 9.3 and



EXHIBIT NO. A
PAGE 20 OF 52

Appendix C into the Fund established and governed by said Trust Agreement and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreement and any amendments from time to time made or to be made.

**SECTION 9.4. Plumbing Council of Chicagoland.** Effective as of the dates set forth in Appendix C, each Employer shall contribute the sums set forth or to be determined in the manner set forth on Appendix C for each hour worked by each employee covered by this Agreement, including apprentices, to the Plumbing Council of Chicagoland, a not-for-profit corporation.

The desired policy and priorities of the Plumbing Council will emanate from the Council Advisory Board appointed by the President of the P.C.A. and whose members will represent the P.C.A. on the All Industry Committee that consists of Management and Labor representatives.

The Plumbing Council shall protect, promote, foster, and advance the interests of Employers and employees engaged in the plumbing contracting and servicing industry including, but not limited to, the following pursuits.

A. To engage in public relations programs designed to create a better public understanding of the industry and to encourage greater use of the industry's services by owners and construction and service purchasers for the benefit of the general public.

B. To cooperate with public officials and representatives of other organizations on all matters of mutual interest affecting the construction industry.

C. To foster and promote better Employer/employee relationships and to strive for optimum efficiency and workmanship in construction methods.

D. To foster and provide for the education and training of supervisory and managerial personnel.

E. To promote research and experimentation concerned with improving existing construction methods and developing, testing and promoting new construction materials and/or modes of construction.

F. To promote safety in the plumbing contracting industry by developing programs and activities directed at assisting, technically or

otherwise, architects, engineers, specification writers, general contractors, and governmental authorities and agencies, in the formulation or improvement of federal, state, and municipal regulations and other technical and safety programs having as their objective safe, adequate and improved quality of plumbing contractors' service to the public.

G. To support the activities and programs of the Association, including collective bargaining and related matters.

H. To foster and promote compliance with all laws, regulations, and orders concerning affirmative action and equal opportunity for employment.

I. To engage in all other acts consistent with the purposes and terms of this Agreement and with the laws of the State of Illinois.

J. No part of the industry Fund shall be used for any purpose which tends to restrain or limit competition.

K. To support public officials who support legislation beneficial to Plumbing Contractors.

The parties agree that since the Plumbing Council is an industry fund, proposals related to it are permissive subjects of bargaining. While the PCA has agreed that the "pursuits" of the Plumbing Council, as described in the Plumbing Council By-Laws adopted October 16, 2000, are to be included in the Collective Bargaining Agreement, that inclusion should not be construed as a waiver of the PCA's position that this entire subject is "permissive" and should not be construed as any restriction on the Plumbing Council's right to interpret, amend or change the By-Laws including the "pursuits" recited therein.

Any amendment, change, or alteration of the existing Plumbing Council By-Laws adopted October 16, 2000 including "the pursuits" recited therein will not in any way alter, amend, change or affect the provisions of Section 9.4, par. 3 of the Collective Bargaining Agreement for the term of this Agreement.

**SECTION 9.5. Group Legal Services Plan Fund.** Effective as of the dates set forth in Appendix C, each Employer shall contribute the sums set forth or to be determined in the manner set forth in Appendix C for each hour worked by each employee covered by this Agreement, including apprentices, to the Chicago Journeymen Plumbers' Local Union 130, U.A. Group Legal Services Plan Fund.

EXHIBIT No. A
PAGE 19 OF 54

Each Employer adopts and agrees to be bound by the terms and conditions of the Trust Agreement establishing and governing the Chicago Journeymen Plumbers' Local Union 130, U.A. Group Legal Services Plan Fund with the same force and effect as though said Trust Agreement was set forth here in full. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of said Fund who from time to time shall be appointed as such in accordance with the terms of the Trust Agreement. The Employer agrees to make the contributions required by this Section 9.5 and Appendix C into the Fund established and governed by said Trust Agreement and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of the Trust Agreement and any amendments from time to time made or to be made.

Proposed Amendments to the Group Legal Services Plan Fund will be reviewed by the Trustees of the Group Legal Services Plan Fund.

SECTION 9.6. Industry Advancement Fund. The Union agrees to Management's participation in industry advancement funds and will participate as a partner in proposed industry dialogues.

SECTION 9.7. Non-Deduction from Wages. Contributions provided under Sections 9.2, 9.3, 9.4 and 9.5 shall not be deducted from the wages of the employees.

SECTION 9.8. Contribution and Deduction Due Dates. All contributions and deductions provided for in this Agreement are due the first (1st) day of the month following the month for which they are owed. However, contributions and deductions received by the Union by the fifteenth (15th) day of that month will not be subject to interest and liquidated damage charges (e.g. contributions and deductions for the month of June are due July 1, but can be paid up to July 15 without penalty). An Employer who fails to make such contributions and deductions by the due date therefor, shall pay in addition to the actual delinquent amounts, interest thereon beginning with the due date at the rate of one and one-half percent (1-1/2%) per month thereon and liquidated damages in the amount of eight percent (8%) on the cumulative outstanding balance due. The delinquent Employer shall also be responsible for any employee's claim for Welfare benefits arising during the period of such delinquency.

If discovered that prior contributions or deductions have not been in accordance with the terms of this Agreement, the Employer advised of the discrepancy shall remit the amounts due plus the above described interest and liquidated damages. The Employer may contest the findings as provided in

Article III, Section 3.6 of this Agreement. If then found that monies remain due and payable, the Employer shall remit same within thirty (30) days after findings. Upon failure to remit monies due within thirty (30) days after findings, the Employer shall additionally reimburse the Trustees of the various Funds and/or the Union for all costs incurred, including but not limited to legal, audit and court fees, in order to enforce collection of the monies due.

The provisions for interest, liquidated damages, reimbursement of litigation costs, strikes, picketing and/or other remedies set forth herein and available to the union and/or Trustees of the various Funds in the event of an Employer's breach of any obligation under this Section 9.8 and Sections 9.1, 9.2, 9.3, 9.4, 9.5, 9.7, and 9.9 of this Article IX, and Sections 6.4, 6.5, 6.6 and 6.10 of Article VI are cumulative and are not intended to serve and shall not serve as a substitute for or in any way limit any other remedies of relief which also may be available to the Union and/or the Trustees under this Agreement or under any Illinois or federal law. Further, the Union's failure to exercise its rights to withdraw its members from the employ of, or to picket, strike or take other lawful economic action against any Employer who violates this Section 9.8 or Sections 9.1, 9.2, 9.3, 9.4, 9.5, 9.7 and 9.9 of this Article IX or Sections 6.4, 6.5, 6.6 and 6.10 of Article VI, and/or the Joint Arbitration Board's failure to award any remedy available hereunder for a violation of such Section or Sections, in either case, shall not be deemed a waiver on the part of the Union or the Joint Arbitration Board to exercise such right or award such remedy, respectively, in the case of any such subsequent violations by the same Employer or another Employer.

Upon five (5) days written notice by Certified Mail the Union shall have the right to withdraw its members from the employ of, to picket and/or to take other lawful action against any Employer who fails to make the required benefit contributions and/or deductions as required by this Agreement. Any employee who loses time from work because of the failure of this Employer to pay said fringe benefit contributions and/or deductions as required by this Agreement, shall be reimbursed by the Employer for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or other action taken by the Union under this Section. Such withdrawal of employees, picketing and/or other lawful economic action shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration.

In the event an Employer shall default in the payment of any contributions or deductions provided for by the terms of this Agreement, it shall be considered the same as failure to pay wages.

34

35

EXHIBIT No. A
PAGE 29 OF 56

**SECTION 9.9. Employer Recording.** Each Employer shall file with the Union on a reporting form to be devised by the Union, on or before the due date for the remittance of contributions and deductions, an itemization of the money payments required to be paid by the Employer covered by said report under the terms of this Agreement. The Union and Fringe Benefit Funds shall have the right to inspect Employer's payroll records as well as the other records described in Section 1.6 of this Agreement, for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to the contract rate of wages and Fringe Benefit Fund contributions being paid. The Employer shall make such books and records available at reasonable business times and hours, at the option of the Union or Fringe Benefit Funds, either to a Business Representative of the Union or a representative of a certified public accountant designated by the Union or Fringe Benefit Funds. The Employer shall retain payroll records including but not limited to time sheets for a period of ten (10) years. The Union shall have the right upon two (2) days written notice by Certified Mail to withdraw its members from the employ of, to picket and/or to take other lawful economic action against any Employer in order to compel the Employer to make such books and records available. If employees are withdrawn from any job or if the Union strikes in order to compel an Employer to make such books and records available, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay. Such withdrawal of employees picketing and/or other lawful economic action to compel an Employer to make his books and records available shall not be considered a violation of this Agreement on the part of the Union and it shall not be a subject of arbitration.

# ARTICLE X
## HIRING

Each journeyman shall request a referral slip from the Local Union office when changing jobs and present same to his new Employer. If a journeyman does not obtain said referral slip, he may be cited before the Executive Board of the Union. The Employer may be held responsible to the Joint Arbitration Board for anyone the hires and puts to work without a referral slip. The Union shall refer applicants for employment according to the following minimum standards:

1. The selection of applicants for referral to any job shall be on a nondiscriminatory basis and shall not be based on or in any way affected by the applicant's race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service in accordance with relevant Illinois, local, and federal law.

2. The Employer shall have the sole and exclusive right of accepting or rejecting applicants for work and need not give preference or priority to applicants referred by the Union.

3. The selection, hiring, supervision and training of all apprentices shall be subject to the rules and control of the Plumbers Joint Apprenticeship Committee LU 130 U.A., and further shall be subject to the Provision of Article X, Paragraph 1 of this Agreement.

4. All referral slips must contain the following information:

a) The employee's name, social security number, plumbing license number, address, and telephone number;

b) The employee's certifications, i.e., OSHA, HAZCOM, competent person, safety cross, cross connection and back flow license, etc.;

c) The Employer's name, address, telephone number, the location, date and time, to report, and whom to contact at that location.

A copy of the referral slip will be mailed to the employee, and a copy of the referral slip will be faxed to the Employer.

NOTE: The Plumbing Council of Chicagoland and Plumbing Contractors Association will notify all contractors of the requirement of requesting a referral slip from all new hires. This requirement will also be a subject of discussion at an All Industry meeting.

5. When the Union does not furnish qualified persons within forty-eight (48) hours (Saturdays, Sundays and holidays excluded) of the initial request, the Employer shall be free to obtain people from any source. In doing so the Employer shall be permitted to hire persons. It is understood that preference for such employment shall be given to journeymen with previous experience in the plumbing industry.

# ARTICLE XI
## ON THE JOB INJURIES

Employees covered by this Agreement who, as a result of injuries received on the job, are required to obtain medical aid for such injuries, shall be reimbursed for said time spent in obtaining medical aid. If the Employer's doctor or Employer's insurance company doctor makes available to the injured

36

37

EXHIBIT A
PAGE 7 of 56

employee evening or non-working hours for further aid or treatment of an injury, which will not cause a loss of regular work time, then said employee shall arrange to have all further visits to the doctor scheduled for non-working hours.

## ARTICLE XII
### INDUSTRY COMMITTEE

The parties hereto agree that it is in the mutual interest of those engaged in the plumbing industry to have a formal mechanism to deal with issues which concern the industry and which affect the interests of the Employers and Union and employees represented by the Union who are parties to, bound by or covered by this Agreement. Therefore, the parties hereto agree to establish an All Industry Committee to meet, discuss and deal with such issues. Said Committee shall be composed of the President of the Plumbing Contractors Association of Chicago and Cook County; three (3) members appointed by the President of the Contractors Association who shall be Employers and who shall serve in an advisory capacity to the Plumbing Council of Chicagoland, Inc.; the Union's Business Manager, and three (3) members appointed by the Business Manager from among the officers of the Union. Co-Chairmen shall be elected (one Labor and one Management) from the designated members of the Committee. The Committee shall meet from time to time as determined by the Co-Chairmen. All meeting expenses and costs shall be shared equally by the Contractors Association and the Union. The expenses and costs incurred by either the Contractors Association or the Union in connection with any action or undertaking by those respective parties related to or arising out of any matter considered by the Committee shall be borne by the party taking such action.

## ARTICLE XIII
### JURISDICTIONAL DISPUTES

The Employer and Union agree that in the event of any jurisdictional dispute between the Union and another labor organization bound by the Standard Agreement establishing the Joint Conference Board of the Construction Employers' Association and the Chicago and Cook County Building Trades Council with respect to any work at or related to any site or project within Cook County, Illinois at which the Employer is engaged or is to be engaged as a contractor or a subcontractor or to perform any work, said dispute shall be submitted to said Joint Conference Board for final and binding resolution pursuant to said Standard Agreement and the Board's procedures thereunder. The Employer and Union agree to be bound by the procedures and decision of the Joint Conference Board with respect to any such dispute in accordance with said procedures.

38

## ARTICLE XIV
### SUCCESSORS AND ASSIGNS

SECTION 14.1. Employer Entities Bound. This Agreement is binding upon the Employer regardless of whether he or it changes the name or address of his or its business and upon any other business entity which is engaged, controlled and/or operated by the Employer or its principals or any of them. This paragraph is intended to apply to the scope of work covered by this Agreement and shall not be construed as adding to the scope of such work.

SECTION 14.2. Successors and Assigns. This Agreement shall be equally binding on the Employer and its successors and assigns and it is the intent of the parties that this Agreement shall remain in effect for its full term and bind the successors of the respective parties. In furtherance of this intent, it is agreed that in the event of any sale, merger, acquisition, consolidation or any other transfer of the Employer's business, the Employer shall make it a condition of such transfer and the agreement by which any such transfer is accomplished shall provide that the transferee shall be bound by the terms of this Agreement. The Employer shall give the Union written notice of any such transfer at least ten (10) days prior to the closing date thereof and specifically advise the Union in said notice that the provisions of this Article have been complied with.

## ARTICLE XV
### ANNUAL REOPENERS

ARTICLE XV HAS BEEN INTENTIONALLY LEFT BLANK

## ARTICLE XVI
### MISCELLANEOUS

SECTION 16.1. Separable Provisions. Each and every clause of this Agreement shall be deemed separable from each and every other clause of this Agreement to the end that in the event that any clause or clauses shall be specifically and finally determined to be in violation of any Illinois or federal law, then in such event such clause or clauses only, to the extent only that any may be so in violation, shall be deemed of no force and effect and unenforceable upon written notice of such invalidity from one party to the other, without such invalidity impairing the validity and enforceability of the rest of the Agreement including any and all provisions in the remainder of any clause, sentence or paragraph in which the language determined to be invalid may appear. In the event of such invalidity and notice thereof, the parties shall meet promptly at

39

No. A
PAGE 22 OF 57

the request of either party to negotiate mutually acceptable substitute language. If the parties are unable to agree on such substitute language, either party shall be permitted to exercise all legal and lawful economic recourse in support of its demands notwithstanding any provisions of this Agreement to the contrary.

**SECTION 16.2. Duration of Agreement.** The collective bargaining agreement between the Chicago Journeymen Plumbers' Local 130, U.A. and the Plumbing Contractors Association of Chicago and Cook County shall be in effect between June 1, 2004 and May 31, 2007, and thereafter for successive yearly periods, unless written notice to terminate or with its intention to modify the Agreement is received, by certified mail – return receipt requested, no more than ninety (90) days but no less than sixty (60) days prior to the expiration date of any such then current collective bargaining agreement.

## ARTICLE XVII
## SERVICE & MAINTENANCE AGREEMENT

The Agreement recognizes that there exists a Plumbing Service & Maintenance Area agreement, the Chicago Journeymen Plumbers' Local Union 130, U.A. Service & Maintenance Agreement. Whenever the terms of this Agreement shall conflict with the terms of the Service & Maintenance Agreement, the terms of the Service & Maintenance Agreement shall control.

This Agreement is hereby executed as of the 1st day of June 2004 at Chicago, Illinois.

PLUMBING CONTRACTORS ASSOCIATION OF
CHICAGO AND COOK COUNTY

George W. Treuelaar
Chairman of Labor RelationsCommittee

Lori Abbott,
Labor Relations Committee

Robert Melko
Labor Relations Committee

Walter A. Brongiel
Labor Relations Committee

Craig Campegila
Labor Relations Committee

CHICAGO JOURNEYMEN PLUMBERS'
LOCAL UNION 130, U.A

James T. Sullivan
Business Manager

James F. Coyne
Secretary-Treasurer

Robert F. Walsh
Recording Secretary

40

---

## APPENDIX A
## OCCUPATIONAL JURISDICTION

The following shall constitute the occupational jurisdiction of work of the Uni

1. All piping for plumbing, water, waste, floor drains, drain grates, ply, leader, soil pipe, grease traps, sewage and vent lines.
2. All piping for water filters, water softeners, water meters and setting of same.
3. All cold, hot and circulating water lines, piping for house pumps, cellar drainers, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances and the handling and setting of the above-mentioned equipment.
4. All water services from mains to buildings, including water meters and water meter foundations.
5. All water mains from whatever source, including branches and fire hydrants, etc.
6. All down spouts and drainage areas, soil pipe, catch basins, manholes, drains, gravel basins, storm sewers, septic tanks, cesspools, water storage tanks, etc.
7. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and washrooms, shower stalls, etc.
8. All bathroom, toilet room and shower room accessories, i.e., as towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.
9. All lawn sprinkler work, including piping, fittings and lawn sprinkler heads.
10. All sheet lead lining for X-ray rooms, fountains, swimming pools or shower stalls, tanks or vats for all purposes and for roof flanges in connection with the pipe fitting industry.
11. All fire stand pipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose cabinets and accessories and all piping for sprinkler work of every description.
12. All block tin coils, carbonic gas piping, for soda fountains and bars, etc.
13. All piping for railing work, and racks of every description, whether screwed or welded.
14. All piping for pneumatic vacuum cleaning systems of every description.
15. All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil, or gas, used in connection with railway cars, railway motor cars, and railway locomotives.

41

EXHIBIT No. A
PAGE 23 OF 56

16. All marine piping, and all piping used in connection with ship building and ship yards.

17. All power plant piping of every description.

18. The handling, assembling and erecting of all economizers and super-heaters, regardless of the mode or method of making joints, hangers and erection of same.

19. All internal and external piping on boilers, heaters, tanks and evapora-tors, water legs, water backs and water grates, boiler compound equip-ment, etc.

20. All soot blowers and soot collecting piping systems.

21. The setting, erecting and piping, for all smoke consuming and smoke washing and regulating devices.

22. The setting, erecting and piping of all instruments, measuring devices, ther-mostatic controls, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, min-ing and industrial work.

23. The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, cool-ers, and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling, distilling and brewing plants, heating, ventilating and air conditioning systems.

24. All piping for artificial gases, natural gases and holders and equipment for same, chemicals, minerals and by-products and refining of same, for any and all purposes.

25. The setting and erecting of all under-feed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping and ac-cessories and parts of burners and stokers, etc.

26. All ash collecting and conveyor piping systems, including all air wash-ing and dust collecting piping and equipment, accessories and appurte-nances and regulating devices, etc.

27. The setting and erection of all oil heaters, oil coolers, storage and dis-tribution tanks, transfer pumps, and mixing devices, and piping thereto of every description.

28. The setting and erecting and piping of all cooling units, pumps, re-claiming systems and appurtenances, in connection with transformers, and piping to switches of every description.

29. All fire extinguishing systems and piping; whether by water, steam, gas or chemical, fire alarm piping, and control tubing, etc.

30. All piping for sterilizing, chemical treatment, deodorizing and all clean-ing systems of every description and laundries for all purposes.

31. All piping for oil or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.

32. All piping for power, or heating purposes, either by water, air, steam, gas, oil, chemicals or any other method.

33. All piping, setting and hanging of all units and fixtures for air condi-tioning, cooling, heating, roof cooling, refrigerating, ice-making, humidifying, dehumidifying, dehydrating, by any method, and the test-ing and testing, servicing of all work after completion.

34. All pneumatic tube work, and all piping for carrying systems by vacuum, compressed air, steam, water, or any other method.

35. All piping to stoves, fire grates, blast and heating furnaces, ovens, dri-ers, heaters, oil burners, stokers and boilers and cooking utensils, etc. of every description.

36. All piping in connection with central distribution filtration treatment stations, boosting stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground suppl. lines to cooling wells, suction basins, filter basins, setting basins, and aeration basins.

37. All process piping for refining, manufacturing, industrial and shipping purposes, of every character and description.

38. All air piping of every description.

39. All temporary piping of every description in connection with building and construction work, excavating and underground construction.

40. The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with the pipe fitting industry.

41. The handling and setting of boilers, setting of fronts, setting of soot blowers, and attaching of all boiler trimmings.

42. All pipe transportation lines for gas, oil, gasoline, fluids and liquids, wa-ter products, and water lines and booster stations of every description.

43. All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, caulked joints, expanded joints, rolled joints or any other mode or method of making joints in connection with the pipefitting industry.

44. Laying out, cutting, bending and fabricating of all pipe work of every description, by whatever mode or method.

45. All methods of stress relieving of all pipe joints made by every mode or method.

46. The assembling and erecting of tanks used for mechanical, manufac-turing or industrial purposes, to be assembled with bolts, packed or welded joints.

47. The handling and using of all tools and equipment that may be neces-sary for the erection and installation of all work and materials used in the pipefitting industry.

42

43

EXHIBIT No. A

PAGE 24 OF 56

48. The operation, maintenance, repairing, servicing and dismantling of all work installed by journeymen under this Agreement.

49. All piping for cataracts, cascades, i.e., (artificial water falls), make-up water fountains, captured waters, water towers, cooling towers, and spray ponds, used for industrial, manufacturing, commercial, or any other purpose.

50. Piping herein specified means pipe made from metals, tile, glass, rubber, plastic, wood, or any other kind of material or product manufactured into pipe, usable in the pipe fitting industry, regardless of size or shape.

51. The installation and testing of backflow preventors.

44

## APPENDIX B
## FLEXIBLE WORK DAY AND WORK WEEK

Except as specifically permitted under the following provisions of this Appendix B governing flexible work days and the flexible work week, employees covered by the Agreement to which this Appendix B is attached shall work the standard work day and standard work week at the straight time rates and be paid for overtime work at the overtime rates as provided in Section 5.2 of the Agreement.

1. Only Employers who employ apprentice plumbers may be permitted to utilize a flexible work day or a flexible work week. An adequate quantity of competent apprentices are available through the Joint Apprenticeship Committee.

2. The flexible work day and flexible work week are not permitted for any work done on a contract basis. They are permitted only under the terms further specified hereinbelow for residential, commercial or industrial jobbing repair and/or service work billed to the customer on an hourly basis.

3. No employee may be scheduled for or required to work more than eight (8) flexible hours in any work week.

4. The flexible work day, Monday through Friday, consists of up to eight (8) consecutive hours between 6:00 a.m. and 8:30 p.m., exclusive of a one-half (1/2) hour unpaid meal break to be taken no later than five (5) hours after the employee's starting time; provided, however, that in no event may such a flexible work day start later than 12:00 p.m. (noon). The pay rate for flexible hours worked before the regular starting time for the Employer's shop (i.e. 6:00 a.m. or 9:00 a.m.) and after the regular quitting time (i.e. 2:30 p.m. or 5:30 p.m.) shall be the regular straight time hourly rate plus fifteen percent (15%). All hours worked on such days in excess of eight (8) hours shall be paid at one and one-half (1-1/2) times the regular straight time hourly rate.

5. Eligible Employers may schedule Saturdays as a regular fifth (5th) flexible work day in any work week for jobbing repair and/or service work. In such cases, the Saturday flexible work day shall consist of the hours between 8:00 a.m. and 4:30 p.m., exclusive of a one-half (1/2) hour unpaid lunch break taken no later than five (5) hours after the starting time. Employees who are required to work Saturdays as a flexible fifth

45

EXHIBIT No. A

PAGE 25 OF 56

(5th) work day and who are required to perform residential jobbing repair and/or service work in a residential building of no more than three (3) stories on such day shall be paid at their regular straight time hourly rate for such fifth (5th) day for such work between the hours of 8:00 a.m. and 4:30 p.m. Employees who are required to perform any commercial or industrial jobbing repair and/or service work or to perform jobbing repair and/or service work in a residential structure of more than three (3) stories during such hours on Saturdays shall be paid at their regular straight time hourly rate plus fifteen percent (15%) for all such hours. All jobbing repair and/or service work performed on such Saturdays before 8:00 a.m. or after 4:30 p.m. shall be paid for at one and one-half (1-1/2) times the regular hourly rate. Such Saturdays cannot be used as a make-up day. All work for which flexible time is permitted by this Appendix "B" to be performed on Sunday or a legal holiday identified as such in the Agreement shall be paid at double time.

## APPENDIX C

### WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS

The following wage rates and fringe benefit contributions per hour payroll deductions shall be in effect as of June 1, 2004 through May 31, 2005.

### PAYROLL DEDUCTIONS

| | Wages | Welfare | Pension | Education* | Promotion | Lead Service | 401k Savings Plan | Workers Date |
|---|---|---|---|---|---|---|---|---|
| Journeymen | $37.10 | 6.25 | 3.44 | .64 | .44 | .49 | 1.50 | .32 |
| Sub-Foremen | $38.35 | 6.25 | 3.44 | .64 | .44 | .49 | 1.50 | .32 |
| Foremen and Inspectors | $39.10 | 6.25 | 3.44 | .64 | .44 | .49 | 1.50 | .32 |
| Superintendents or District Foremen (supervising four or more men) | $40.10 | 6.25 | 3.44 | .64 | .44 | .49 | 1.50 | .32 |
| General Superintendents or District Superintendents (supervising 19 or more men) | ** | 6.25 | 3.44 | .64 | .44 | .49 | 1.50 | .32 |

** at least 6% above Superintendent's wage rate per hour

| | Wages | Welfare | Pension | Education* | Promotion | Lead Service | 401k Savings Plan | Workers Date |
|---|---|---|---|---|---|---|---|---|
| Apprentices | | | | | | | | |
| (1st six months) | 12.60 | 6.25 | 3.44 | .64 | .44 | .49 | N/A | N/A |
| (2nd six months) | 13.75 | 6.25 | 3.44 | .64 | .44 | .49 | N/A | N/A |
| 2nd Year | 16.30 | 6.25 | 3.44 | .64 | .44 | .49 | N/A | .23 |
| 3rd Year | 18.55 | 6.25 | 3.44 | .64 | .44 | .49 | 1.00 | .23 |
| 4th Year | 24.50 | 6.25 | 3.44 | .64 | .44 | .49 | 1.00 | .23 |
| 5th Year | 27.85 | 6.25 | 3.44 | .64 | .44 | .49 | 1.00 | .23 |

*includes $0.05 per hour Direct Contribution to the U.A. Training Fund

Wage increases of $2.80 per hour effective June 1, 2005 and $3.00 per hour effective June 1, 2006 have been negotiated under the terms of this Agreement for Journeymen Plumbers. Apprentice wage increases effective June 1, 2005 and June 1, 2006 will be determined on the same percentage as the Journeymen rate. An apprentice with a minimum of 4 ½ years credit who has successfully obtained the City of Chicago or State of Illinois plumbers license test shall be paid the then current journeymen rate. These increases for journeymen and apprentices are to be allocated in a manner to be determined by Chicago Journeymen Plumbers' Local Union 130, U.A. in its sole and exclusive discretion. Local 130 will timely notify each signatory Employer of its determination concerning the allocation.

EXHIBIT No. A

# IMPORTANT INFORMATION

## PLUMBERS' RETIREMENT SAVINGS FUND (401(K) PLAN) AND SAVINGS PLAN

**PLUMBERS' RETIREMENT SAVINGS FUND (401(K) PLAN):**

The Employer shall deduct from the wages (before taxes) of each journeyman plumber enrolled in the 401(k) Plan a minimum of one dollar and fifty cents ($1.50) per each hour worked for the Plumbers' Retirement Savings Fund (401(k) Plan). The Employer shall deduct from the wages (before taxes) of each Fourth and Fifth year Apprentice enrolled in the 401(k) Plan a minimum of one dollar (1.00) per each hour worked for the Plumbers Retirement Savings Fund (401(k) Plan). First, Second and Third year Apprentices are not included in this Plan.

**REGULAR SAVINGS PLAN:**

The Employer shall deduct from the wages (after taxes) of each journeyman plumber not enrolled in the 401(k) plan a minimum of one dollar and fifty cents ($1.50) per each hour worked for the Savings Plan. The Employer shall deduct from the wages (after taxes) of each Fourth year and Fifth year Apprentice not enrolled in the 401(k) plan a minimum of one dollar ($1.00) per each hour worked for the Savings plan. First, Second and Third year Apprentices are not included in this Plan.

**WORKING DUES:**

The Employer shall deduct (after taxes) thirty-two cents ($0.32) per hour for each hour worked for each Journeyman, Foreman, Superintendent and General Superintendent, and twenty-three cents ($0.23) per each hour worked for each Apprentice, with the exception of first year-first six months Apprentices for Working Dues.

## IMPORTANT NOTE

**PLUMBERS' RETIREMENT SAVINGS FUND (401(K) PLAN)**

A participant can direct more than the base contributions rate of $1.50 per hour, in increments of ($0.50) fifty cents, but not more than $8.00 per hour to the 401(k) Plan not to exceed the IRS limits.

## PLUMBERS SAVINGS PLAN

An employee, in cooperation with his/her Employer, has the following options:

1) An employee not participating in the 401(k) Plan can allocate more than $1.50 per hour, in increments of fifty cents ($0.50), to the Plumbers' Savings Plan.

2) An employee in the 401(k) Plan can allocate at least $1.50 per hour or more, in fifty cents ($0.50) increments, to the Plumbers' Savings Plan, in addition to amounts contributed to the employee's 401(k) Plan.

# APPENDIX D
## ALCOHOL AND DRUG PROGRAM

The ALCOHOL AND DRUG PROGRAM, appendix was made and entered into as of the 1st day of June, 1992, by and between CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A. (hereinafter referred to as the "Union"), and the PLUMBING CONTRACTORS ASSOCIATION OF CHICAGO AND COOK COUNTY on behalf of itself and its member contractors (hereinafter, for convenience, collectively referred to as the "Employer" or "Employers") for the purpose of supplementing the parties' current collective bargaining agreement having a term of June 1, 1995 thorough May 31, 1998 (hereinafter referred to as the "Agreement") and all successor contracts for their entire terms as well.

### WITNESSETH:

WHEREAS, the Employer has agreed, pursuant to Article IV of the Agreement, to make all reasonable provisions for the safety and health of its employees during the hours of their employment, and

WHEREAS, the Union has agreed, pursuant to Article IV of the Agreement, to promote in every way possible the realization of the responsibility of the individual employee with regard to preventing accidents to himself and to his fellow employees during the hours of their employment, and

WHEREAS, the Employer and Union believe that alcohol and drug use by employees covered under the parties' Agreement endanger the safety and health of such employees, their co-workers, other trades people and the public generally; and

WHEREAS, in order to fulfill their respective agreements under said Article IV, the Employer and Union are committed to the principle of an alcohol and drug free work place and to the establishment of fair, appropriate, practical and effective rules and procedures for maintaining same; and

WHEREAS, after investigation, analysis and negotiation, the Employer and Union have reached agreement as to such rules and procedures.

NOW, THEREFORE, the Employer and the Union hereby agree as follows:

EXHIBIT NO. A
PAGE 27 of 56

# I. PURPOSE AND SCOPE OF APPENDIX

A. The purposes of this Appendix are to establish rules and procedures governing (1) the testing of applicants for drug use as a condition of their initial employment with any Employer under the Agreement, (2) the testing of employees covered by the Agreement where there is reasonable suspicion to believe that such employees are using or are impaired by alcohol or drugs during working hours or on the premises of an Employer, and (3) the discipline of such employees who possess, dispense, receive, use or are impaired by alcohol or drugs during working hours or on such premises.

B. An Employer shall have no right to impose on any applicant or employee any testing, disciplinary actions or other measures relating to alcohol or drugs, except in accordance with this Appendix.

C. The sole exception to the foregoing shall be the temporary, limited right of an Employer to adopt an alcohol and-drug program required by a customer as a condition to securing and satisfying a given contract. This right shall be limited to the life of the applicable contract or project. In each such case, the Employer shall promptly advise the Union of the requirement that it adopt such a program, and shall provide the Union and the employees assigned to the project with a copy of the program.

D. The Employer and the Union shall cooperate to ensure that a copy of this Appendix is promptly provided to all Employers bound by the Agreement and that all employees and applicants are informed of the provisions hereof.

## II. INTERPRETATION OF APPENDIX, AND RESOLUTION OF DISPUTES CONCERNING EMPLOYEES

A. The Employer and the Union acknowledge that questions, disagreements and disputes may arise from time to time concerning interpretation of this Appendix and compliance by the parties with the provisions hereof as concerns employees. In all such cases, representatives of the Employer and the Union shall meet and confer within ten (10) working days following written notice by one party to the other of the existence of any such question, disagreement or dispute.

B. If the Employer and the Union are unable to resolve such question, disagreement or dispute pursuant to such conference, the Employer or the Union may submit the matter to the Joint Arbitration Board (JAB) for disposition in

accordance with Sections 3.4, 3.5, and 3.6 of Article III of the Agreement. The decision of the JAB shall be final and binding upon the Employer, the Union and the employee.

C. The provisions of this Clause II of this Appendix shall not be available to applicants rejected for initial employment under the provision of Clause VII hereof. However, it shall be a violation of this Appendix for any Employer to put any applicant to work in a bargaining unit position under the Agreement unless such applicant has taken the drug test and tested negative as provided for under Clause VII hereof. The Union or any other Employer may complain of such violation to the JAB pursuant to Section 3.4 of the Agreement. The JAB shall hear and resolve the complaint pursuant to Sections 3.4, 3.5, and 3.6 of the Agreement. The decision of the JAB shall be final and binding on the Union and all Employers who are parties to the dispute. The JAB shall have the authority in such disputes, without limitation, to order that an Employer found guilty of violating this Paragraph C to withdraw any conditional offer of employment made to the applicant, discharge the applicant, cease and desist from employing the applicant under the Agreement, to fine the Employer and/or to enter such other order as it deems appropriate.

## III. DEFINITIONS

As used in this Appendix, the following terms shall have the meanings stated:

A. "Applicant" - an individual who has applied for or who is seeking initial employment in any bargaining unit position with any Employer bound by the Agreement. "Applicant" does not include an individual who has held such initial employment with an Employer under the Agreement or under a prior collective bargaining agreement between an Employer and the Union but who thereafter applies for or seeks a bargaining unit position with the same or another Employer under the Agreement.

B. "Employee" - An individual who is employed by an Employer in a bargaining unit position under the Agreement or who previously has been employed in such position by an Employer under the Agreement or under a prior collective bargaining agreement between an Employer and the Union.

C. "Employer's premises". - The Employer's offices, shops, parking lots and other facilities and grounds, the Employer's vehicles and equipment, and other work sites, buildings, facilities and grounds entered upon by the employee in connection with his job duties.

EXHIBIT A
PAGE 28 of 56

D. "Alcohol" - Any liquid or solid which contains any amount or percentage of any alcohol, as chemically defined, with the exception of commercial products used in the plumbing trade.

E. "Drugs" - Any substance within the general classes of drugs commonly described as amphetamines, barbiturates, benzidiazepines, cocaine, marijuana/hashish, methadone, methaqualone, opiates, phencyclidine (PCP), and propoxyphene.

F. "Reasonable Suspicion" - A belief based upon observations which reasonably lead the Employer or its agent to suspect that an employee is in possession of, dispensing, receiving, using or impaired by alcohol or drugs during working hours or while on the Employer's premises.

## IV. PROHIBITED EMPLOYEE CONDUCT AND DISCIPLINE

A. In order to protect the safety and health of all employees, their coworkers, other tradesmen and the general public, EMPLOYEES SHALL NOT POSSESS, DISPENSE, RECEIVE, USE OR BE IMPAIRED BY ALCOHOL OR DRUGS AT ANY TIME DURING WORKING HOURS OR WHILE ON THE EMPLOYER'S PREMISES.

B. The conduct described below shall constitute a violation of the foregoing policy. Any violation of these rules by an employee shall be grounds for immediate discharge:

(1) Possession, dispensing or receiving alcohol or drugs during working hours or while on the Employer's premises;

(2) Using or being impaired by alcohol or drugs during working hours or while on the Employer's premises;

(3) Refusing to cooperate fully in an inspection conducted by an Employer of its property to determine the presence of alcohol or drugs;

(4) Refusing, for a second time, to submit to reasonable suspicion testing requested by the same Employer, including a refusal to sign required consent and chain of custody forms; and

(5) Refusing to submit to testing requested by an Employer or testing positive for alcohol or drugs at any time within one (1) year after enrollment in a legitimate, supervised alcohol or drug rehabilitation program.

## V. PRESCRIBED MEDICATION

A. Any employee who is using a prescribed or "over the counter" medication should so advise his Employer, where the employee has been informed by his physician or pharmacist that the medication may have impairing effects.

B. Where so advised, an Employer shall determine whether the employee's continuation of his existing job duties would present an undue risk of injury to the employee, his co-workers or others at the work site. Where it is determined that such a risk would be presented, the Employer may reassign the employee to an appropriate other work site or task.

## VI. TESTING OF EMPLOYEES

A. Where an Employer has a reasonable suspicion that an employee is using or is impaired by alcohol or drugs during working hours or while on the Employer's premises, the Employer shall have the right to request that the employee submit to urinalysis testing for alcohol and drugs.

B. Whenever reasonably possible, the Employer's observation shall be summarized in writing and signed by each of the observers.

C. An employer shall have the right, once during his employment by the same Employer, to refuse his Employer's request that he submit to such testing. In such event, the employee shall be suspended, without pay, for the balance of that workday as well as the next, and such discipline shall not be grievable.

D. Whenever an employee is to be tested, the employee shall be provided with transportation to and from the collection facility. The Employer shall advise the Union of the name and address of the collection facility to which the employee will be sent and the approximate time that the employee will be reporting there. The Union shall dispatch an Officer, Business Representative or other agent, if available, to the collection facility. No specimen shall be collected from the employee without such Union agent being present unless any such agent is unavailable or is unreasonably detained.

E. The employee shall be permitted to give the specimen in private, subject to the right of a representative of the Employer, the Union and the collection facility to remain immediately outside the stall or other area where the specimen is given, to the extent permitted by the collection facility.

F. The Employer shall pay the employee for the time required to give the specimen, including travel to and from the collection facility, and shall bear all costs relating to any testing which it requests.

G. All testing conducted pursuant to this Appendix shall be performed by laboratories certified by the U.S. Department of Health and Human Services

EXHIBIT NO. A

PAGE 29

(HHS) to perform urinalysis testing for federal agencies. Additionally, all collection facilities and laboratories selected for such testing shall comply with all applicable HHS or National Institute on Drug Abuse (NIDA) guidelines and protocols, except as superseded by this Appendix.

H. The suspected presence of alcohol and drugs shall initially be tested by the EMIT methodology. Presumptive positive results for drugs shall be confirmed by the GC/MS methodology. Presumptive positive results for alcohol shall be confirmed if they meet or exceed the cut-off levels established for alcohol or by the laboratory in accordance with industry standards. Laboratory test results shall be reviewed by a medical review officer (MRO) recommended by the medical care provider associated with the laboratory. The MRO shall issue a test report. If the MRO concludes that there is a legitimate medical explanation for an apparent positive laboratory test and that the reason for that laboratory test result is consistent with legal drug use, the MRO shall report the test result as being negative for such reason but shall not identify the drug(s) which were confirmed as positive by the laboratory tests or otherwise comment on the results of such tests. A negative MRO report shall be deemed a negative test result for all purposes under this Appendix.

I. The Employer shall be responsible for selecting and making its own arrangements with one or more medical care providers with respect to collection facilities and procedures, laboratories, testing methodologies and MRO reports in accordance with the requirements of this Clause VI, and shall bear all costs relating thereto.

J. All MRO reports relating to testing requested by the Employer shall be submitted to the Employer. Within one (1) business day of the Employer's receipt thereof, the Employer shall transmit a copy of same to the Union if the employee has authorized such disclosure in writing.

K. An employee who submits to testing at the request of this Employer may be temporarily suspended pending the Employer's receipt of the applicable MRO report, where the Employer reasonably believes that the employee's presence on the job during such period would pose a risk to the safety or health of the employee, his co-workers, other tradesmen or the public generally. If the MRO report is negative for both alcohol and drugs, the Employer shall immediately reinstate the employee and pay him back pay for all hours lost due to such suspension.

L. An MRO report which is positive for either alcohol or drugs shall constitute a rebuttable presumption of the employee's impairment during working hours or while on the Employer's premises under this Addendum. In order to

overcome said presumption in any proceeding brought by the Union pursuant to this Appendix, the Union and the employee shall have the burden of persuading the JAB by clear and convincing evidence that the MRO report is erroneous.

## VII TESTING OF APPLICANTS

A. It is a condition of initial employment that all applicants take and pass a pre-employment urinalysis drug test. Such testing shall conform with the procedures and standards specified in Clause VI, Paragraphs G and H.

B. Applicants for plumber apprentice positions who are to be referred for employment to an Employer by Joint Apprenticeship Committee (JAC) shall be sent for such testing by the JAC. All other applicants shall be referred by the Employer to the Union which shall send such applicants for such testing. The costs related to such testing shall be borne by the applicant.

C. The applicant shall fill in and sign such consent and chain of custody forms required by the health care provider as well as such consent and authorization forms required by the Employer and Union or JAC in the case of applicants who are to be referred by the JAC for employment in apprentice plumber positions to authorize such testing and to release the MRO report to the Union, or the JAC in the case of applicants who are to be referred by the JAC for plumber apprentice positions, and the prospective Employer of the applicant. The applicant shall report to the designated collection facility within forty-eight (48) hours after being directed to do so by the Union or the JAC in the case of applicants for plumber apprentice positions. Failure of the applicant to so report for testing shall constitute a failure to take such test and disqualify the applicant from employment. Neither the consent forms required by the medical care provider nor any information filled in by an applicant or conveyed by an applicant to the medical care provider concerning any medical condition the applicant may have or any lawful drugs the applicant may be taking therefore shall be disclosed to the Union, the JAC or the prospective Employer except as permitted under the circumstances set forth in Clause VIII of this Appendix. The applicant shall be provided with a copy of the MRO report. The MRO report shall be maintained in confidential files by the Union or the JAC and the prospective Employer as required by applicable law and shall be maintained as a confidential document as required by law and by Clause VIII hereof except to the extent that disclosure thereof is required by law or permitted under the circumstances set forth in Clause VIII.

D. Applicants who test negative for drugs, as defined in Clause VI, Paragraph H, shall be eligible for initial employment. Applicants who test positive for drugs in accordance with such Clause and Paragraph shall be ineligible

EXHIBIT A
PAGE 30 OF 56

for such employment, and any conditional offer of such employment made to such applicant shall be withdrawn.

## VIII.  CONFIDENTIALITY

The Employer and the Union, and the JAC in the case of applicants for apprentice plumber positions, shall keep confidential and shall not disclose any documents relating to employee testing or rehabilitation programs, or information contained therein, except as required by law or in connection with any grievance, claim or cause of action brought by or against the Employer, the Union, the JAC, the applicant or the employee or any other person or entity arising from or in any way relating to the subject matters covered by this Appendix. The filing of any such grievance, claim or cause of action shall constitute a waiver by the applicant or employee of the confidentiality of any and all such documents and the release of the Employer, Union, the JAC and any other person or entity from any confidentiality obligations with respect to any and all such documents.

## IX.  LABOR MANAGEMENT RELATIONS SUBCOMMITTEE

The parties hereto agree to form a Labor Management Relations Subcommittee composed of three (3) members appointed by the Plumbing Contractors Association ("PCA") and three (3) members appointed by Local 130 ("Union") to revise Appendix D the Alcohol and Drug Program.

The purpose of the Subcommittee shall be to establish a new Alcohol and Drug Program in order to maintain a drug and alcohol-free workplace and to reduce the probability of accidents or incidents related to the use and/or misuse of alcohol and other drugs by employees so that services are delivered safely, efficiently, and effectively.

The Subcommittee shall commence its meetings immediately upon completion of collective bargaining negotiations and shall complete the Revised Alcohol and Drug Program by December 31, 2004.

It is also agreed that the ability to reopen the contract for the sole purpose of funding this program exists.

## X.  CONTINUING APPLICABILITY OF AREA AGREEMENT

This Addendum is specifically incorporated in and made part of the Agreement as though set forth in full therein. Each and all of the provisions of the Agreement shall continue in full force and effect for the duration of said agreement, except where specifically superseded by the express terms of this Appendix.

56

57

*NOTES*

# AGREEMENT

between

## PLUMBING CONTRACTORS ASSOCIATION

### OF

### CHICAGO and COOK COUNTY



and

## CHICAGO JOURNEYMEN PLUMBERS'

### LOCAL UNION 130, U.A.



June 1, 2007, through May 31, 2010

EXHIBIT No. A
PAGE 32 OF 57

# TABLE OF CONTENTS

                                                                    Page

ARTICLE I - RECOGNITION ............................................................... 7
SECTION 1.1.  Parties to the Agreement ............................................. 7
SECTION 1.2.  Recognition Clause .................................................... 7
SECTION 1.3.  Union Shop ............................................................ 8
SECTION 1.4.  Subcontracting ........................................................ 8
SECTION 1.5.  Moonlighting .......................................................... 8
SECTION 1.6.  Access to Premises .................................................... 8
SECTION 1.7.  Exclusivity ........................................................... 9

ARTICLE II - STRIKES AND LOCKOUTS ................................................... 9
SECTION 2.1.  Lockouts .............................................................. 9
SECTION 2.2.  Employee Job Action ................................................... 9

ARTICLE III - DISPUTE RESOLUTION .................................................... 9
SECTION 3.1.  Grievance Arbitration ................................................. 9
SECTION 3.2.  Joint Arbitration Board .............................................. 10
SECTION 3.3.  Audits ............................................................... 10
SECTION 3.4.  Other Contract Violations ............................................ 11
SECTION 3.5.  Hearing .............................................................. 12
SECTION 3.6.  Powers of the Joint Arbitration Board ................................ 12
SECTION 3.7.  Indemnification of the
              Joint Arbitration Board .............................................. 13

ARTICLE IV - WORKING CONDITIONS ..................................................... 13
SECTION 4.1.  General Policy ....................................................... 13
SECTION 4.2.  Reporting Accidents .................................................. 14
SECTION 4.3.  Employer Insurance ................................................... 14
SECTION 4.4.  Unsafe Working Conditions ............................................ 14
SECTION 4.5.  Plumbing Codes ....................................................... 14
SECTION 4.6.  Older Workers ........................................................ 14
SECTION 4.7.  Non-Discrimination Policy ............................................ 15
SECTION 4.8.  Staffing ............................................................. 15
SECTION 4.9.  Pipe Cutting ......................................................... 16
SECTION 4.10. Specifications ....................................................... 17
SECTION 4.11. Plumbing Supervision ................................................. 17
SECTION 4.12. Rule Violators ....................................................... 17
SECTION 4.13. OSHA and HAZCOM Training ............................................. 17
SECTION 4.14. OSHA and HAZCOM Violations ........................................... 17
SECTION 4.15. Automobile Not Required .............................................. 18

# TABLE OF CONTENTS

Page

SECTION 4.16.  Work Connected Expenses. ........ 18
SECTION 4.17.  Travel Expenses ........ 18
SECTION 4.18.  Tool Provision. ........ 18
SECTION 4.19.  Clothing Provision ........ 19

ARTICLE V - HOURS AND OVERTIME ........ 19
SECTION 5.1.  Work Day and Work Week ........ 19
SECTION 5.2.  Overtime ........ 20
SECTION 5.3.  Show Up Pay ........ 21
SECTION 5.4.  Holidays ........ 21
SECTION 5.5.  Shift Work ........ 21

ARTICLE VI - WAGES ........ 21
SECTION 6.1.  Wage Rates and Fringe Benefits ........ 21
SECTION 6.2.  Foreman's Wage ........ 22
SECTION 6.3.  Apprentice's Wage ........ 22
SECTION 6.4.  Pay Day ........ 22
SECTION 6.5.  Wage Payment. ........ 23
SECTION 6.6.  Union Dues Deduction. ........ 23
SECTION 6.7.  Pay at Separation. ........ 23
SECTION 6.8.  Bond Requirement. ........ 24
SECTION 6.9.  Prevailing Wage Payment ........ 25
SECTION 6.10. Retirement Savings Fund ........ 25

ARTICLE VII - FOREMEN ........ 26
SECTION 7.1.  Foreman's Duties ........ 26
SECTION 7.2.  Foreman's Schedule ........ 27

ARTICLE VIII - APPRENTICES ........ 27

ARTICLE IX - FRINGE BENEFITS ........ 28
SECTION 9.1.  Savings Plan ........ 28
SECTION 9.2.  Health & Welfare and Pension Plan. ........ 28
SECTION 9.3.  Apprentice Trust Fund. ........ 29
SECTION 9.4.  Plumbing Council of Chicagoland ........ 29
SECTION 9.5.  Group Legal Services Plan Fund. ........ 31
SECTION 9.6.  Industry Advancement Fund. ........ 31
SECTION 9.7.  Non-Deduction from Wages ........ 32
SECTION 9.8.  Contribution and Deduction Due Dates ........ 32
SECTION 9.9.  Employer Recording ........ 33

Page

ARTICLE X - HIRING ........ 34

ARTICLE XI - ON THE JOB INJURIES ........ 35

ARTICLE XII - INDUSTRY COMMITTEE ........ 35

ARTICLE XIII - JURISDICTIONAL DISPUTES ........ 36

ARTICLE XIV - SUCCESSORS AND ASSIGNS ........ 36
SECTION 14.1. Employer Entities Bound ........ 36
SECTION 14.2. Successors and Assigns ........ 36

ARTICLE XV - ANNUAL REOPENERS ........ 37

ARTICLE XVI - MISCELLANEOUS ........ 37
SECTION 16.1. Separable Provisions. ........ 37
SECTION 16.2. Duration of Agreement ........ 37

ARTICLE XVII - SERVICE & MAINTENANCE
AGREEMENT ........ 38

APPENDIX A - OCCUPATIONAL JURISDICTION ........ 39

APPENDIX B - FLEXIBLE WORK DAY
AND WORK WEEK ........ 42

APPENDIX C - WAGE RATES AND FRINGE BENEFITS
AND PAYROLL DEDUCTIONS ........ 44

APPENDIX D - ALCOHOL AND DRUG PROGRAM ........ 46

APPENDIX E - UNITED ASSOCIATION STANDARD
OF EXCELLENCE PROGRAM ........ 46

** As used herein references to the masculine gender shall also refer to
the feminine. **

EXHIBIT No. A
PAGE 34 OF 56

# ARTICLE I
## RECOGNITION

**SECTION 1.1. Parties to the Agreement.** This Agreement is made and entered into as of June 1, 2007 between the Plumbing Contractors Association of Chicago and Cook County, solely for and on behalf of each of its individual members, who are duly licensed by law and bonded to engage in the plumbing business, are established in that business, intend to employ not less than two (2) journeymen and one (1) apprentice, and hereafter are collectively referred to as "Employer" or "Employers," and Chicago Journeymen Plumbers' Local Union 130, U.A., which is composed of competent licensed journeymen and apprentices who are duly authorized by law to install and inspect all plumbing work, and which hereinafter is referred to as "Union."

**SECTION 1.2. Recognition Clause.** The Employers recognize the Union as the exclusive collective bargaining agent for all of their employees who perform any of the work applicable within the Fifty-One (51) Articles of Jurisdiction of the United Association as set forth in "Appendix A" to this Agreement for which the Union has been chartered by the United Association within the City of Chicago, Illinois, Cook County, Illinois and vicinity, Will County, Illinois outside the city limits of Joliet, Illinois, as delineated by the United Association in 1972, that part of DuPage County, Illinois known as the Argonne National Laboratories, fifty percent (50%) of the employees employed by the Employers who (whose shop is located in the geographic jurisdiction of Local Union 130) are parties to this Agreement when performing said work in Lake County, Illinois, and wherever else the Union has territorial jurisdiction. The Union recognizes the Plumbing Contractors Association of Chicago and Cook County as the exclusive bargaining agent of its individual member Employers with respect to their employees.

Employees covered by this Agreement shall place in position and connect all materials, appurtenances, devices, fixtures and equipment used in the construction of plumbing as well as handle, unload and distribute all of the above mentioned upon and after its arrival on the job site or premises. When fixtures or equipment are protected by covering during construction, such covering shall be put on and removed and fixtures cleaned by employees covered by this Agreement.

It is understood and agreed that the foregoing Paragraphs of this Section shall not be construed as limiting the scope of bargaining unit work and that employees covered by this Agreement shall perform all work covered by the

Employees covered by this Agreement shall do all the laying out, cutting and drilling of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with work falling under the jurisdiction of the Union.

EXHIBIT No. A

PAGE 35 OF 57

7

Fifty-One (51) Articles of Jurisdiction of the United Association, included in Appendix A which comes within the work jurisdiction for which the Union has been chartered by the United Association.

SECTION 1.3. Union Shop. All journeymen and apprentices and all journeymen and apprentices who are hereafter employed by Employers covered by this Agreement, shall, as a condition of employment, become members of the Union on the earliest date provided by applicable federal law after their employment, or the effective date of this agreement, whichever is later, and shall, as a condition of employment, remain members of the Union during the term of this Agreement.

SECTION 1.4. Subcontracting. No journeyman shall be permitted to subcontract or accept a lump sum payment (lump) for the installation of any work under the jurisdiction of the Union. Parties violating this Section shall be penalized by their respective organizations through the Joint Arbitration Board. The Employers agree not to sublet, lump or contract for labor any work which comes under the jurisdiction of the Union with any member of the Union. Such subletting, lumping or contracting shall be considered a violation of this Agreement and summarily dealt with, in accordance with the grievance procedures of this Agreement. Nothing herein prohibits subcontracting work to MBE, WBE, and DBE as long as those entities are signatory to an Agreement with the Union.

The Employer agrees that in the event the Employer subcontracts any work coming under the provisions of this Agreement to any other person or firm, the Employer shall subcontract the same only to another Employer who is a party to this Agreement. A refusal of employees to render services upon a job site where this subsection is violated, shall not be a violation of this Agreement for any purpose, nor shall such refusal be cause for discharge.

SECTION 1.5. Moonlighting. No employee shall be permitted to work for himself or work after hours or on Saturday, Sunday or Holidays as a self-employed Employer or work for another Employer as a subcontractor. First time violators may be summoned before the Union Executive Board in accordance with the procedures of the United Association Constitution. However, a trial shall be set for repeat offenders. Discharge from employment for repeat offenders will not be construed as a violation of this Agreement.

SECTION 1.6. Access to Premises. Duly authorized representatives of the Union or of the Joint Arbitration Board shall, for cause, be allowed to visit any job and/or any Employer's place of business during working hours to interview the Employer or the Employer's duly authorized representative, or the men in his employ, to determine compliance with the Agreement. Further, it is agreed that job site visits by a Union representative are without restrictions but that visits to the shop shall be by appointment if that is the Employer's policy.

Duly authorized representatives of the Fringe Benefit Funds shall be extended the same right, as described above, in order to inspect or audit all books and records of the Employer which pertain or relate to the Employer's compliance with this Agreement. Such records which shall be available for inspection or audit include but are not limited to: payroll and time records, time books, payroll and income tax returns, blueprints, contracts, invoices, permits, and documents related to workers' compensation, public liability and unemployment insurance coverage. It is understood and agreed that such visit, inspection or audit shall in no way hinder the progress of the work being performed. Should the Employer refuse to permit such inspection or audit as authorized by this Article, the Employer shall be liable for all costs and legal fees incurred by the Union, the Fringe Benefit Funds or the Joint Arbitration Board in obtaining a court order requiring the Employer to permit such inspection or audit. Such liability shall be in addition to and not in lieu of any relief or remedies available in such proceeding to the Union, the Trustees of the Fringe Benefit Funds or the Joint Arbitration Board under any Illinois or federal law.

SECTION 1.7. Exclusivity. Any agreement entered into between the parties hereto with any other Employer association, Employer or labor organization engaged in the Plumbing Industry shall be brought to the attention of the other party and no Agreement which will in any way conflict with the provisions of this Agreement will be made by either party to this Agreement.

## ARTICLE II
## STRIKES AND LOCKOUTS

SECTION 2.1. Lockouts. The Employer agrees that there shall be no lockout of employees during the term of this Agreement.

SECTION 2.2. Employee Job Action. The Union agrees that there shall be no abandonment of work over any matter which is subject to arbitration, provided, however, that the Union may withdraw its members from the employ of, picket and/or use other lawful economic means against any Employer by reason of the Employer's non-payment of wages, deductions or contributions on the Employer's failure to obtain, maintain in full force and effect and keep on file with the Union the requisite bond or letter of credit and workers' compensation insurance as more fully provided under this Agreement, notwithstanding that disputes over such matters are subject to arbitration hereunder.

## ARTICLE III
## DISPUTE RESOLUTION

SECTION 3.1. Grievance Arbitration. Disagreements or disputes arising under or which involve interpretations of this Agreement, shall be processed and settled by arbitration in the manner set forth in this Article.

EXHIBIT 2B

SECTION 3.2. Joint Arbitration Board. The parties hereto agree that all arbitrable disputes arising between them shall be submitted to a Joint Arbitration Board. The Joint Arbitration Board shall be comprised of ten (10) members, consisting of five (5) members appointed by the Plumbing Contractors Association of Chicago and Cook County and five (5) members appointed by the Union. A quorum of the Joint Arbitration Board shall consist of at least three (3) Board members appointed by the Plumbing Contractors Association and at least three (3) Board members appointed by the Union. The Board shall not take any action without the presence of a quorum. Decisions of the Joint Arbitration Board shall be by a majority vote which shall consist of Fifty percent (50%) plus one (1) of those members of the Joint Arbitration Board present and voting.

The duties of the Joint Arbitration Board shall be to decide on all cases as presented and in conformity with the sections contained in this Agreement. In the event of deadlock by the Board, whereby a decision cannot be rendered, the case will be assigned to an arbitrator mutually agreeable to the Board members. In the event the Board members are unable to agree on an arbitrator, the Board shall give written notice of such inability to agree to the parties to the arbitration. Thereafter, the parties shall request the American Arbitration Association to submit a list of seven (7) arbitrators. The parties shall alternate in striking names from the list until one name remains, with the first strike to be made by the party initiating the arbitration. The person whose name remains shall be the arbitrator. The arbitrator shall have no authority to vary or ignore the provisions of this Agreement. The arbitrator's decision shall be final and binding on the parties to the arbitration. The expenses of the arbitrator shall be divided equally between the parties to the arbitration, except that no employee shall be required to pay any such expense.

The Joint Arbitration Board shall meet twelve (12) times during the calendar year, or as needed, for the purpose of considering current and new business. The reasonable and necessary expenses and costs incurred by the Joint Arbitration Board in performing its functions under this Agreement, as authorized by the Union, The Fringe Benefit Funds and Plumbing Council of Chicagoland who are entitled to payments or contributions under this Agreement, shall be paid by them in proportion to their interests out of the sums collected as liquidated damages pursuant to Article IX, Section 9.8 hereof, to the extent that such sums are available; otherwise such expenses and costs shall be borne and paid for by the parties thereto.

Within a period of thirty (30) days time after the execution of this Agreement, the Joint Arbitration Board shall meet, organize, elect a Chairman, Secretary and Treasurer and transact any business that may properly come before the Joint Arbitration Board. The Secretary need not be a member of the Joint Arbitration Board and in that event the Secretary shall have no vote.

SECTION 3.3. Audits. In the event that an audit by the accountants for the Union and/or the Fringe Benefit Funds to which the Employer is required to make contributions under this Agreement discloses an alleged underpayment of wages,

10 -

deductions or contributions required by this Agreement, the Employer shall have ten (10) days after notification by the accountants of such alleged underpayment to pay such delinquencies and any interest and/or liquidated damages due with respect thereto in accordance with Article IX, Section 9.8 hereof, or if the Employer disagrees with the audit or any part thereof, to arrange to meet with the accountants within said ten (10) day period to discuss the area(s) of disagreement and present all records in support of his position(s). If the Employer fails to make the payment shown on the audit, fails to meet with the accountants and produce said records or in the disagreement(s) is not resolved, the matter will be referred by the accountants to the attorneys for the Union and/or the Funds. The attorneys shall attempt to resolve the matter by requesting in writing that the Employer meet with them within ten (10) days. If the Employer fails within ten (10) days of such request to pay such delinquencies and interest and/or damages due in accordance with Article IX, Section 9.8 of this Agreement, to arrange such meeting or fails to appear at such meeting and produce all records and any other evidence, including witnesses, in support of its position(s) at such meeting, or if the matter is not resolved at such meeting, the attorneys will notify the Secretary of the Joint Arbitration Board of the existence of a dispute under this Agreement. No records or other evidence, including witnesses, which the Employer has not produced for the accountants or the attorneys will be considered by the Joint Arbitration Board at any hearing before it with regard to such dispute, nor will the Board's proceedings be delayed by the Employer's production of such other or additional records or evidence.

Action will be brought before the Joint Arbitration Board by the Union, Employer, or any other interested party when any audit reveals that a licensed journeyman plumber and/or apprentice or any other party who performs jurisdictional work has not been paid the prevailing rate.

The Fringe Benefit Fund Trustees will review uncontested audits for underpayment of wages, and inform the Joint Arbitration Board of each violation, which will be prosecuted by the Union.

SECTION 3.4. Other Contract Violations. In the event of an alleged contract violation other than one which is subject to Section 3.3 of this Article, immediately above, a Business Representative or other representative designated by the Union will notify the Employer of such alleged violation and attempt to resolve the matter informally. If the matter is not resolved or if the Employer refuses to meet in a reasonable and timely fashion with the Union's Representative to resolve the matter, said representative shall notify the Secretary of the Joint Arbitration Board in writing of the existence of a dispute.

It shall be considered a violation of this Agreement for any plumbing contractor to intentionally omit backing supports for plumbing fixtures and accessories from an appropriate bid package. Further, any plumbing foreman or superintendent who willfully refrains from directing journeymen or apprentices under his/her charge to install all backing and accessories related to a plumb-

11

ing system shall be found in violation of this Agreement. Both the Employer and the employee may be summoned before the Joint Arbitration Board for appropriate action.

When provided the opportunity and a plumbing contractor submits an appropriate bid in accordance with the above, and it is not accepted, there will be no action taken against the contractor or his employee by the Union.

**SECTION 3.5. Hearing.** After receipt of a notice of dispute under Section 3.3 or 3.4, above, of this Article, the Secretary of the Joint Arbitration Board shall send the Employer written notice of the date, time and place of a hearing before the Board with respect to the dispute, together with a copy of the written notice of the dispute. The Board members present at the hearing shall hear the evidence in the case and shall render a decision which it will issue in writing over the signature of the Secretary of the Board. Said decision shall be final and binding on the parties to this Agreement. The Secretary of the Board will make or direct the making of the official minutes or transcription of the hearing. No other recording of the hearing is permitted. The Employer must appear at the hearing. Appearance through an outside representative only does not constitute the Employer's appearance. If the Employer is unable to so appear at the date, time and place set forth in the notification of hearing, he shall promptly notify the Board's Secretary in writing of the reasons therefore and request a postponement. Such request for postponement must be received by the Secretary no later than 5:00 p.m. of the seventh day before the time scheduled for the hearing. A request for a postponement will be granted only for good and sufficient reasons. No Employer will be granted more than one (1) postponement in the same case. If the Employer fails to appear at a scheduled hearing or at a hearing postponed to a later date at his request or if an Employer's request for postponement is not received by the Board's Secretary in the timely manner as set forth hereinabove or is denied, the Board members shall hear the case at the appointed time notwithstanding the Employer's failure to appear and shall decide the case upon the evidence before it in the same manner as set forth hereinabove, which decision shall be final and binding on the parties to this Agreement.

**SECTION 3.6. Powers of the Joint Arbitration Board.** The Joint Arbitration Board shall have full power to enforce this Agreement against offending employees and/or Employers by appropriate penalties or remedies including, without limitation, fines, replacement of defective work without pay, or other appropriate sanctions. The Joint Arbitration Board shall have full power to summon Employers, the Union and employees covered by this Agreement against whom charges of violations have been preferred and to summon Employers and employees covered by this Agreement to testify in any manner before the Joint Arbitration Board. Such summons shall be served by registered or certified mail by the Secretary of the Joint Arbitration Board before which such dispute is pending. Such summons may compel the production of any document or the testimony of any witness which the Joint Arbitration Board deems relevant to the resolution of the case. Failure of the Employer or employees to respond when so summoned, except for valid reason, shall subject him or them

to the payment of any cost incurred by the Joint Arbitration Board in connection with such failure to respond.

**SECTION 3.7. Indemnification of the Joint Arbitration Board.** The parties hereto agree that the members of the Joint Arbitration Board representing either or both of them in proceedings before such Joint Arbitration Board under the provisions of this Agreement shall be indemnified as Joint Arbitration Board members against any judgment, court costs and attorney's fees incurred and/or paid by the Joint Arbitration Board members in defending any suit or legal proceeding brought against the Joint Arbitration Board members in their respective capacity to enforce any liability or alleged liability on account of any loss, claim or damage which, if established against the Joint Arbitration Board members, shall constitute a valid and collectible loss sustained by either appropriate party under the terms of this Agreement.

In the event of any other suit or action against a member or members of the Joint Arbitration Board for or on account of an act performed pursuant to the authority provided for in this Agreement, the Joint Arbitration Board may draw upon any funds which are in its hands or under its control subject to such rules and provisions as the Joint Arbitration Board may establish relating to the disposition of such funds.

In consideration of such indemnity, the Joint Arbitration Board members shall promptly give notice to the Joint Arbitration Board, and the Plumbing Contractors Association of Chicago and Cook County of the institution of any such suit or legal proceeding. At the request of the Union or the Plumbing Contractors Association of Chicago and Cook County, the Joint Arbitration Board members shall furnish copies of all pleadings and other papers therein, and at the election of either the Union or the Plumbing Contractors Association of Chicago and Cook County shall permit either or both to conduct the defense of such suit or legal proceedings in the name of the Joint Arbitration Board by and through attorneys of their own selection. In the event of such election the named Joint Arbitration Board member or members shall give all reasonable information and assistance other than pecuniary which shall be deemed necessary to the proper defense of suit or legal proceeding.

Joint Arbitration Board members found guilty of fraudulent or illegal conduct shall not be indemnified under this Section.

**ARTICLE IV**

**WORKING CONDITIONS**

**SECTION 4.1. General Policy.** The Employers agree to make all reasonable provisions for the safety and health of their employees during the hours of their employment. The Union agrees to promote in every way possible the realization of the responsibility of the individual employee with regard to preventing accidents to himself and to his fellow employees during the hours of their employment.

Exhibit No. ___  
PAGE 38 OF 56

Any person who is, will be or was required to attend plumbing classes two evenings each week for 24 consecutive months, as a condition of membership in the Union, is mandated to complete training in HAZCOM and OSHA safety classes, or to produce proof such training has been completed. Such persons not fulfilling this obligation will not be referred out to work.

**SECTION 4.2. Reporting Accidents.** It shall be the duty of the employee in charge to report personally to both the Union and the Employer accidents involving personal injury which may occur on the job where they are employed.

**SECTION 4.3. Employer Insurance.** Employers shall carry sufficient Workers Compensation, public liability and unemployment insurance, together with occupational disease insurance. The Employer shall provide the Union with a copy of the insurance certificates or such other proof that it has obtained and maintains in full force and effect such insurance coverages.

**SECTION 4.4. Unsafe Working Conditions.** Employees covered by this agreement shall not work under any of the following conditions:

1. Where the equipment, tools, ladders and/or job conditions are judged to be unsafe by the Building Trades Safety Committee.

2. For any Employer who does not carry a bond or meet the other obligations as provided for in Section 6.8 of this Agreement and have sufficient Worker's Compensation Insurance and State Unemployment Insurance. (A copy of these coverages shall be on file in the Union Office.)

3. 125 feet above ground level unless an operable man lift is provided to transport the employee to or above that level.

4. On any job not in conformity with the safety standards promulgated pursuant to the Occupational Safety and Health Act.

5. For more than one (1) Employer at the same time.

**SECTION 4.5. Plumbing Codes.** The Employer shall comply with all plumbing codes of the various municipalities in which the work is being installed. Any violation of said plumbing ordinances shall be reported to the office of the Business Manager of the Union.

The Union reserves the right to have its Business Representatives witness all tests of any plumbing systems.

**SECTION 4.6. Older Workers.** At least one out of every five (5) men working in the shop shall be older men.

**SECTION 4.7. Non-Discrimination Policy.** Each Employer bound under the terms of this Agreement shall promulgate and enforce policies forbidding any sexual harassment or discrimination based on race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service.

**SECTION 4.8. Staffing.** In order to provide for the safety and health of their employees, the Employer agrees that at no time shall there be less than two (2) journeymen, or one (1) journeyman and one (1) apprentice, working in any one (1) building of any job or job site (except, however, that this provision shall not apply to jobbing work as the term is generally used in the industry). The Employer shall be the sole judge of the number of additional men required.

All Employers who do not employ two (2) employees, as stipulated in the area agreement, will be required to meet with the Local Union 130 Business Manager as soon as possible. The Employer will be told that he is required to comply with the terms of the agreement (with the understanding that temporary latitude may be allowed in a depressed economy).

However, during the times that the Employer is not in compliance with the Agreement:

a. Each week the Employer is required to send a written report to the Union of all jobs on which his company is working.

b. His company will be audited every six (6) months and at year end.

c. Any and all of his employees will submit an affidavit annually stating that, "to the best of his (the employee's) knowledge, he performed all the jurisdictional work completed by the shop".

d. Progress and status of these shops will be reported through the Joint Arbitration Board and violation of the agreement may result in a fine of the value of wages and fringes for all hours worked by others, other than the journeyman.

The Union agrees to supply skilled men to the extent that they are available, to the members of the Plumbing Contractors Association of Chicago and Cook County, it being understood that the Union shall furnish men to all other Employers with whom it has Agreements governing wages and working conditions. When employment opportunities exist within the industry, the Union will refer men only to Employers with whom the Union has signed Agreements.

The Metal Trades Division of the Union is composed of members employed by Employers to perform tasks not requiring a plumber's license or other tasks not described as non-jurisdictional work. The Employers may, with the written approval of the Business Manager of the Union, hire a probationary metal trades

EXHIBIT A

PAGE 39 OF 56

16

division journeymen for a period not to exceed six (6) months for the purpose of evaluating the potential new hires.

Wages for these employes are determined by the Apprentice Wage Scale. While contributions to the Fringe Benefits Funds will not be required for probationary Metal Trades Journeymen, hours worked by probationary Metal Trades Journeymen will be shown on the Employers Monthly Contribution Report. Starting with the 6th month of employment, benefit contributions will be required as stipulated in Article 6.1 of this Agreement.

An Employer employing at least two (2) building tradesmen may request one metal tradesman for performance of non-jurisdictional work. A second metal tradesman may be requested by an Employer employing at least ten (10) building tradesman to one metal tradesman. Thereafter, additional metal tradesman may be referred to an Employer employing at least twelve (12) building tradesmen in ratios of ten (10) building tradesmen to one metal tradesman. At no time may the number of metal tradesmen exceed the number of apprentices in a shop.

An employee in the Metal Trades Division may, upon the request of the Employer, enter the Apprentice Program provided the requirements of the Apprentice Committee are satisfied. Credit for hours worked as a metal tradesman toward hours required for completion of an apprenticeship will be granted as determined by the U.S. Department of Labor, Office of Apprenticeship Training, Employer and Labor Services (OATELS), with the approval of the Business Manager and the Joint Apprenticeship Committee.

**SECTION 4.9. Pipe Cutting.** All sizes of pipe shall be cut and threaded and/or welded and fabricated by employees covered by this Agreement. There shall be no restrictions on the use of power equipment. Where it is impractical or a hardship to cut, thread, or weld pipe on the job in the opinion of the Employer involved, such pipe may be cut, threaded or welded and fabricated in the shop. Flashings and air chambers shall be made on the job or in the shop by journeymen plumbers and/or apprentices covered by this Agreement. Such cutting, threading, and/or welding, fabrication and making of flashings and air chambers shall be performed by journeymen and apprentices of the Union.

All pipe, hanger rod and fabricated piping of any size which is cut in the shop of the Employer or in any approved Employer's shop covered by this Agreement shall be labeled by the journeymen performing the work. The journeymen who obtain the labels from the office of the Business Manager of the Union shall be held accountable for said labels.

All sizes of pipe shall be cut and threaded by employees covered by the Collective Bargaining Agreement of Local Union 130, except for pipe nipples which are defined as lengths of 10 inches or less.

---

**SECTION 4.10. Specifications.** Specifications and contract information forms shall be distributed by the Union to all Employers. The Employer shall complete these forms for all jobs above Two Hundred Thousand Dollars ($200,000.00), for which he has received a signed contract and within ten (10) days after receipt of such signed contract shall forward a copy of the form to the office of the Business Manager of the Union. Intentional falsification of information on these forms shall constitute a violation of this Agreement.

**SECTION 4.11. Plumbing Supervision.** It is understood that for the purpose of maintaining a proper record and check on all work which comes under local ordinances and/or the Illinois Plumbing License Law such work should be done under the supervision of a licensed and bonded Plumbing Contractor, and by licensed journeymen and apprentices and to protect the public against unsanitary installation by unqualified men, it will not be considered a violation of this Agreement for any journeyman to adhere to the rules of the Union. Nothing shall be incorporated in the "Working Rules" of the Union that conflict in any way with the provisions of the Agreement.

**SECTION 4.12. Rule Violators.** Any employee having charge of work who is taken out of a shop for violation of Union rules shall be required to remain one (1) working week of forty (40) hours in an advisory capacity if the Employer so desires, the case to be entitled to a hearing as provided in Article III of this Agreement.

**SECTION 4.13. OSHA and HAZCOM Training.** The Employers wish to have referral of Employees with certificates of completion of HAZCOM and OSHA education courses.

The Union and Employers will require that all members be certified in HAZCOM and OSHA. Members will have to get certified through night school. It will not be a violation of this Agreement for any Employer to reject a Union member for employment if he lacks these certifications. Classes in both OSHA and HAZCOM will be offered regularly at the Plumbing Industry Center.

The Employers will provide the Union with names of Employees who have already been certified so that the certification information can be retained and updated in computerized form.

A referral slip, arrived at from a computerized data base, will reflect certification in these areas.

Jobbing and service repair class, to be taught at day and night school, will be jointly developed to help in this market recovery or retention effort.

**SECTION 4.14. OSHA and HAZCOM Violations.** A written citation will be issued by the Employer to the employee for each violation of OSHA and HAZCOM requirements and a copy will be sent to the Union. An employee can be terminated

17

immediately for wilful violations of OSHA and HAZCOM standards.

The offending employee will be summoned before the Union Executive Board upon receiving a third citation and appropriate action will be taken. He will also be apprised that upon receipt of a fourth citation the matter will be turned over to the Joint Arbitration Board for disposition that may result in the employee sharing in the amount of the Employer's fines.

**SECTION 4.15. Automobile Not Required.** No journeyman shall be required to furnish his automobile or any other conveyance for any purpose other than to transport himself to and from the job.

**SECTION 4.16. Work Connected Expenses.** All expenses incurred by an employee in telephoning or otherwise connected with his work shall be paid by the Employer.

**SECTION 4.17. Travel Expenses.** There will be no travel expense for work performed within the jurisdiction of the Union except when prefabrication of work performed outside the Union's jurisdiction. A journeyman so employed in a fabrication shop will be reimbursed in the same amount per mile as established from time to time by the Internal Revenue Service for determining the standard mileage reimbursement shall be calculated from the job site to the place of fabrication and back to the job site. However, if any Employer provides transportation for employees working under this Agreement to a fabrication shop to perform work, then no travel expense shall be assessed or charged against such Employer.

**SECTION 4.18. Tool Provision.** The journeymen shall furnish small pliers and rule. All other tools shall be furnished by the Employer. No journeymen shall be allowed to carry tools or materials belonging to the Employer in the journeymen's automobile, with one exception; that exception is that an employee whose automobile is covered by his own automobile insurance policy may voluntarily agree to carry hand tools, including saws all, electric drill (1/2" or smaller), hand torch without tank, radio (communication type), and pipe wrenches not to exceed 18". Should an employee voluntarily agree to carry any hand tools on behalf of his Employer, the Employer shall pay any additional insurance cost necessary to make the employee's existing automobile insurance coverage apply to this business use. The Employer may keep a record of his tools to guard against loss or damage to his equipment. Journeymen who receive tools from their Employers shall be responsible for such tools and make good for any tools lost by said journeymen. The Employer will countersign the receipt and provide the employee with a copy. Upon return of the tools both parties will sign off on a dated receipt indicating which if not all the tools have been returned. The Union will require journeymen to replace or pay for lost or missing tools furnished by their Employer and for which the latter holds a receipt from his journeymen. Should a dispute arise with respect to compliance with

18

the requirements of this Section, the matter shall be promptly brought before the Executive Board of the Union for resolution. If a satisfactory resolution is not obtained before the Executive Board, then the matter shall be referred to the Joint Arbitration Board for final disposition.

**SECTION 4.19. Clothing Provision.** When welders are employed on a job the Employer shall furnish protective clothing, which shall include sleeves, aprons and gloves, welding hoods, goggles, etc. The welders shall be held responsible for this clothing, except for wear and tear or if stolen from the Employer's job location.

## ARTICLE V
## HOURS AND OVERTIME

**SECTION 5.1. Work Day and Work Week.** Eight (8) hours shall constitute a day's work as follows: 8:00 A.M. to noon and 12:30 to 4:30 P.M. on Monday, Tuesday, Wednesday, Thursday and Friday making a forty (40) hour week straight time. The workweek shall be limited to forty (40) hours per week and any all overtime shall be only with the prior approval of the Joint Arbitration Board, except in the case of actual breakdowns of installed work falling within the jurisdiction of the Union. Such breakdowns shall be reported to the Joint Arbitration Board as soon as possible, but in no event later than 4:30 P.M. of the following business day. With the approval of the Joint Arbitration Board, the 8:00 A.M. starting time and 4:30 P.M. quitting time, specified above, may be adjusted by starting no earlier than 6:00 A.M. and no later than 9:00 a.m. with an appropriately adjusted quitting time, e.g. 6:00 A.M. to 2:30 P.M.; 9:00 a.m. to 5:30 p.m. In the case of an earlier adjusted starting time, employees shall be entitled to one-half (1/2) hour lunch break, no later than five (5) hours after the adjusted starting time.

For employees engaged in residential jobbing and repair work in a residential building of more than three (3) stories where such work is billed to the customer on an hourly basis and not on a contract basis, any five (5) days with the exception of Sunday may constitute a workweek. The workday shall consist of eight (8) hours from 8:00 A.M. to 4:30 P.M., provided however, that the earlier starting time as provided for above is permitted. Any hours worked in excess of eight (8) hours per day shall be paid at time and one-half. All hours worked on the sixth (6th) day in any workweek other than a Sunday or a legal holiday shall be paid at time and one-half. All hours worked on Sunday or a legal holiday as provided for in Section 5.4 of this Article V shall be paid at double time. The sixth (6th) working day cannot be used as a make up day. Except as specifically permitted by Appendix B to this Agreement governing the circumstances under which an Employer may schedule flexible hours, employees covered by this Agreement shall work the standard work day and standard work week at straight time rates and be paid for overtime work at the overtime rates as required by this Article.

EXHIBIT NO.
PAGE 41 OF 56

19

Saturday may be used as a make up day subject to the following conditions:

a. The time being made up is due to loss of hours related to weather conditions.

b. Prior permission to work the make up day must be obtained from the Joint Arbitration Board.

c. The decision by the employee to work must be voluntary.

Four ten hour days may constitute a normal work week for specific projects. Prior approval must be received from the Joint Arbitration Board before an Employer may schedule these hours for a project. Approval to work this schedule will be granted for a maximum of sixteen working days. Additional days may, upon request, be granted by the Board if it is deemed necessary.

In general, approval will be considered only for work where a regular eight (8) hour workday may impede the progress of the job, resulting in an undue burden on the owner of the property.

If more than one crew is needed to perform the work, all crews will be scheduled to work the same four (4) days, Monday through Friday. Starting one crew on Monday and another on Tuesday is not permissible. The rate of pay for a schedule of four (4) ten (10) hour days shall be at the regular rate of pay for any ten (10) hour period worked within the approved starting times of 6:00 a.m. to 9:00 a.m. and corresponding quitting times of 4:30 p.m. and 7:30 p.m. All other times outside these approved hours will be paid at the rate of time and one half.

SECTION 5.2. Overtime. In the event of overtime work, as provided in Section 5.1, above, such overtime work shall be performed at the rate of time and one-half if such overtime work occurs during the period from Monday through Saturday; if overtime work occurs on a Sunday or a legal holiday, as set forth in Section 5.4 of this Article, such overtime work shall be performed at double time.

It is the intention of the parties to this Agreement that work on jobs that extend into scheduled overtime or other benefits for purposes of "pirating" employees covered under this Agreement, shall be deemed to be violations of this Agreement and such Employer shall be subject to the sanctions as set forth in Article III, Section 3.6 of this Agreement.

All members of the Union that work on jobs that extend into scheduled overtime shall be given preference to work the overtime. Absenteeism during the regular work week may be cause for an Employer to deny the employee future scheduled overtime.

20

SECTION 5.3. Show Up Pay. Any employee covered by this Agreement reporting to work upon order of any Employer who is a party to this Agreement and not put to work for any reason,* except fire, accidents, other unavoidable causes, or failure to dress properly for the type of construction on which such employee will be working, shall receive two (2) hours' pay for the time lost.

*Any employee covered by this Agreement reporting for work upon order of any Employer who is a party to this Agreement and not put to work because of weather conditions, shall receive one (1) hour of pay for the time lost unless as been previously notified not to report to work. In order to obtain the one (1) hour pay, the employee must remain on the job for that period of time.

SECTION 5.4. Holidays. The following days, or the day on which they are legally celebrated, shall be recognized as legal holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day. No work shall be done on these days, except to protect life and property. Veteran's Day shall be included as a recognized holiday if adopted as such by a majority of unions in the Chicago and Cook County Building Trades Council. A holiday falling on a Saturday will be celebrated on that day. A holiday falling on a Sunday will be celebrated the next day, Monday.

SECTION 5.5. Shift Work. Shifts will not be worked without prior approval of the Joint Arbitration Board. However, when shift work is performed, it must continue for a period of not less than five (5) consecutive working days. If only two (2) shifts are worked, the second (2nd) shift may be for any designated eight (8) hour period beginning after the conclusion of the first (1st) shift, but the starting time selected for the second (2nd) shift is to remain the same for the duration of the shift period.

The hourly rate of employees on the second (2nd) and third (3rd) shifts shall be fifteen percent (15%) over and above the basic hourly rate.

No interruptions shall occur in shift time except lunch and personal breaks.

# ARTICLE VI
# WAGES

SECTION 6.1. Wage Rates and Fringe Benefits. The Employer hereby agrees to employ journeymen plumbers at the Union prevailing wage rates and pay the fringe benefit contributions set forth or to be determined in the manner set forth in Appendix C to this Agreement. The rates and contributions set forth therein shall be deemed the standard rates to be strictly adhered to as of the effective dates shown.

No Employer shall pay wages in excess of the rates set forth or to be determined in the manner set forth in Appendix C. No person having any ownership interest

21

EXHIBIT A

in any Employer shall work with the tools of the trade and any such work shall be considered a violation of this Agreement for which, in addition to other remedies for such violation, the Employer shall pay contributions to the Fringe Benefits Funds (Article IX) on all hours of work in violation of this Agreement. No journeyman shall be permitted to work with anyone working with the tools of the trade who has an ownership interest in any Employer which does any work within the Jurisdiction of work covered by this contract.

Any journeyman member of the Union who is not licensed by the City of Chicago or the State of Illinois shall be issued an apprentice license. The newly organized journeyman will be given twelve (12) months in which to obtain a plumbing license or future wage increases will be withheld until a rate equal to 80% of the then current journeyman rate is reached. The journeyman wage rate will be reinstated upon receipt of a current journeyman license. Appeals due to extraordinary circumstances will be referred to the Joint Arbitration Board. An apprentice with a minimum of 4 ½ years credit who has successfully obtained either a City of Chicago or State of Illinois plumbing license shall be paid the then current journeyman wage.

Foremen rate of pay shall prevail for any journeymen who is assuming full responsibility for any job when such responsibility is of a supervisory nature in representing his Employer, as described in Section 7.1.

**SECTION 6.3. Apprentice's Wage.** It is understood and agreed that the wages of apprentices learning the plumbing trade and the fringe benefits to be paid on their behalf shall be as set forth or to be determined in the manner as set forth in Appendix C as of the effective dates shown thereon.

It is also understood and agreed that fringe benefits will not be paid on behalf of an Apprentice for their mandatory school day. For all other work days not in school, the Welfare Fund contribution for 1st year Apprentices, 2nd year Apprentices, 1st year 2nd 6 month Apprentices, 2nd year Apprentices, and 3rd year Apprentices will be paid at a rate $5.00 per hour less than the then current Journeyman Welfare Fund contribution rate, and no Industry Fund contribution will be paid on mandatory school days.

**SECTION 6.4. Pay Day.** Employee members of the Union shall be paid once each week, on the job, not later than the quitting time of the regular established pay day of the Employer. In no event, may the regular pay day be more than four (4) working days after the day on which the Employer's workweek ends. If the regular pay day should fall on the same day as a legal holiday (as set forth in this Agreement), the employee shall be paid on the workday immediately preceding the legal holiday.

**SECTION 6.2. Foreman's Wage.** All men who supervise and inspect work and/or who are in charge of any work that requires more than four (4) journeymen and/or apprentices shall be paid foreman's scale. The Employer shall select said man, who shall at all times be subject to orders from the Employer or his Superintendent. This Section does not apply to repair work.

**SECTION 6.5. Wage Payment.** No member shall accept wage payment in cash, but shall only accept payment by check, either paid directly to the employee or by direct deposit to the employee's designated bank account, so that a full and complete record of wages, withholding taxes, social security, pension and welfare contributions and any other deductions required by this Agreement will be readily available.

Any Employer who fails to have sufficient funds in the bank to cover any payroll checks issued to employees will be denied the privilege of paying by those payroll checks, and must pay all future payroll by certified check only from such time as the Union gives the Employer written notice that it is satisfied that the Employer is financially responsible and, therefore, able to resume payment of payroll by non-certified check. In the event of an Employer's failure to pay the wages provided for in this Agreement or failure to comply with the terms of this Section 6.5, the Union shall have the right without giving notice to withdraw its members from the employ of, to picket and/or take other lawful economic action against such Employer in order to compel the payment of wages or compliance with this Section 6.5, such withdrawal of employees, picketing and/or lawful economic action shall not be considered a violation of this Agreement or the part of the Union and shall not be a subject of arbitration. If employees are withdrawn from any job or if the Union strikes in order to compel an Employer to fulfill its obligations under this Section, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or any action taken by the Union under this Section.

**SECTION 6.6. Union Dues Deduction.** The Employer agrees that each payroll period it will deduct the working dues owed to the Union for said payroll period from the wages of employees who are covered by this Agreement and who have authorized such deductions, by an authorization which is in accord with applicable law. The Employer shall remit to the Union the amount so deducted at the same time and accompanying the Savings Plan deductions and contributions to the Pension Fund, Welfare Fund, Educational Fund, Plumbing Council, and Legal Fund. All such remittances shall be made by a single check payable to the L.U. 130 U.A. Contribution Account with the report of hours devised by the Union showing the allocation of each remittance.

**SECTION 6.7. Pay at Separation.** If an employee is to be laid off or discharged, except for cause, he shall be so notified and paid off in full, at least one-half (1/2) hour before the established quitting time. Should the Employer require the employee to be laid off or discharged to receive his check at the office of the Employer, the employee shall be allowed two (2) hours at regular pay. Should the employee not be paid promptly upon arrival at the office of the Employer, he shall be paid at the regular hourly rate of pay for all time in waiting. Employees covered by this Agreement, who leave an Employer of their own volition, may wait until the regular pay day of the current week to collect wages due.

24

**SECTION 6.8. Bond Requirement.** Each Employer shall be required to obtain, maintain in full force and effect and keep on file with the Union a bond to secure all monetary obligations required of the Employer by this Agreement pursuant to the following schedule:

| Number of Employees | Amount of Bond |
|---|---|
| 0 to 2 | $25,000 |
| 3 to 5 | $40,000 |
| 6 to 7 | $55,000 |
| 8 to 10 | $70,000 |
| 11 to 12 | $85,000 |
| 13 or more | $100,000 |

It is agreed that the period of liability pursuant to the bond will cover the unpaid wages and expenses accrued within one hundred and twenty (120) days immediately prior to the last date of employment of each employee. The period of liability for payroll deductions and employee contributions required under the terms of the Agreement will be one hundred eighty (180) days immediately preceding the last date of employment of each employee.

Each Employer will obtain the bond required by this Section with a minimum rating of "B" according to the Best or Moody rating service from a broker recommended by the Plumbing Contractors Association with agreement from the Union. The rate or cost of the required bond will be determined by such broker, but in no case will the cost be more than that quoted by another broker for a comparable bond.

In lieu of such bond, the Employer may obtain a bank letter of credit to secure such obligations in such form and on such terms as determined by the Union. This letter of credit shall be held in the Union's possession. An Employer who is unable to obtain such bond or letter of credit shall so certify in writing to the Union and make payment of wages and all deductions and contributions required by this Agreement on a weekly basis by cashier's check. Weekly reports and payments of all contributions and deductions provided for in this Agreement are due on Thursday of the week following the week for which they are owed.

In the event of an Employer's failure to comply with the obligations imposed by this Section, the Union shall have the right to withdraw its members from the employ of, to picket and/or to use other lawful economic means against such Employer in order to compel compliance herewith. Such withdrawal of employees, picketing or other lawful economic actions shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration. In no event, will members of the Union be permitted to work for an Employer who does not fulfill the requirements and obligations set forth in this Section.

Further, an Employer who fails to comply with the obligations imposed by this Section shall also be liable to the employees, Union, Trust Funds and other enti-

ties, as the case may be, for the payment of liquidated damages in the amount(s) equal to the monetary obligation(s) due and owing them or any of them which the bond or letter of credit required by this Section are designed to secure. The Joint Arbitration Board shall have the power to award such liquidated damages in any proceeding before it which involves a violation of this Section, and such liquidated damages shall be in addition to any and all remedies available for violations of any other provision of this Agreement or under any law of the State of Illinois or the United States.

**SECTION 6.9. Prevailing Wage Payment.** Any member of another local affiliated with the U.A. working for a contractor signatory with Local Union 130, U.A., will be paid the prevailing rate of Local Union 130, U.A., as well as any member of Local Union 130, U.A. working in the jurisdiction of another Local Union for a contractor signatory with Local Union 130, U.A.

**SECTION 6.10. Retirement Savings Fund (401(k) Plan).** The Employer shall deduct from the wages (before taxes) of each employee subject to this Agreement who has enrolled in the Plumbers' Retirement Savings Fund (the "401(k) Plan") the minimum sum of one dollar and fifty cents ($1.50) per hour for each hour worked by journeymen and a minimum of one dollar ($1.00) per hour for each hour worked by fourth and fifth year apprentices. An employee can direct deduction of more than the base contribution rate of $1.50/$1.00 per hour, in increments of fifty cents ($.50), to the 401(k) Plan but not more than the maximum amount per hour established from time to time by the Board of Trustees of the 401(k) Plan. The employee should not direct more than the annual limit established by the Internal Revenue Code. The 401(k) Plan deductions shall be withheld from the employee's weekly wages and are due as provided in Section 9.8 of this Agreement. It is expressly understood and agreed that neither the Employer nor the Union shall have any right, title, interest, or power over such money so forwarded, but that all money so forwarded, deposited or accrued shall at all times remain the exclusive property of the employee from whose pay such deductions are made.

An employee enrolled in the 401(k) Plan may also elect to participate in the Savings Plan as set forth in Section 9.1 of this Agreement.

First, second and third year apprentices covered by this Agreement shall be exempt from this Section 6.10.

For each employee electing to participate in the 401(k) Plan each Employer:

a.  adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing the Retirement Savings Trust Fund, and any amendments made thereto as though the Trust Agreement was set forth in full;

25

A
PAGE 44 OF 57

26

b. ratifies, accepts and irrevocably designates as its representative the Employer Trustees of the Retirement Savings Trust Fund, appointed from time to time in accordance with the terms of the Retirement Savings Trust Fund Trust Agreement; and

c. agrees to contribute Pay Deferral Amounts elected under this Section 6.10 into the Retirement Savings Trust Fund, and to be bound by all amendments hereinafter made as if the Employer had signed the original of said Trust Agreements and any Amendments from time to time or to be made.

The manner and frequency of an employee's deferral election is governed by the Plan Document of the Retirement Savings Trust Fund.

## ARTICLE VII
## FOREMEN

SECTION 7.1. Foreman's Duties. A foreman shall represent his Employer on a project to the limit of authority prescribed and given by his Employer. Within that authority he shall perform the following duties as applicable for the orderly and efficient installation of the work:

1. Supervise and coordinate the work and activity of the men;
2. Plan and schedule the work, including the necessary layout;
3. Coordinate his work with that of other trades in an orderly fashion.
4. Anticipate and arrange for the delivery of tools and materials without undue frequency;
5. Represent the Employer at job meetings and safety meetings and implement results consistent with the Employer's policy.
6. Reassign employees for the best use of their abilities, when necessary;
7. Attempt to resolve grievances at an early stage;
8. Assemble and verify the time sheets in the form prescribed by the Employer;
9. Update as-built drawings and instructions for the maintenance of equipment and the operation of systems;
10. Keep job log and transmit to the Employer at the conclusion of the work;
11. Stress safe working habits, and supplement all activity in Article IV of this Agreement; and
12. Give notice to the Local Union that the project or job has begun.

A foreman may supervise journeymen and/or apprentices on more than one building provided it is considered within the job site and covered by the same contract and Employer. If it is necessary for an employee covered by this Agreement to supervise work on separate job sites covered by a separate contract, he shall be rated as a Superintendent.

27

SECTION 7.2. Foreman's Schedule. The following schedule shall determine the supervision on all jobs:

| Journeymen & Apprentices | Sub-Foremen | Foreman | Superintendent |
| --- | --- | --- | --- |
| 4 to 9 | 0 | 1 | 0 |
| 10 to 18 | 1 | 1 | 0 |
| 19 to 25 | 2 | 1 | 1 |
| 26 to 35 | 2 | 2 | 1 |
| 36 to 45 | 3 | 2 | 1 |

## ARTICLE VIII
## APPRENTICES

Employers engaged in residential work related to the service, maintenance and construction of single family residences, garden type and walk-up residential apartments of three levels or less as well as Employers engaged in commercial and service maintenance work as described herein shall be entitled to employ one apprentice for each journeyman only on that type of work subject to the following conditions:

a. Commercial work for this purpose shall be defined as interior plumbing work not to exceed $30,000 (the value of which does not include site utilities).

b. At no time may the number of apprentices in the Employer's employ exceed the number of journeymen.

c. All apprentices who have completed at least three years of training may work alone when engaged in residential and commercial service and maintenance work only. Otherwise, apprentices shall work under the normal conditions defined in this Agreement.

d. Apprentices will be supplied as needed to satisfy the "1 for 1" Agreement. The Employers will maintain the employment of apprentices as long as they have a sufficient workload (this does not include employment for short periods of time) and upon laying off men, will lay off one (1) Apprentice for each journeyman (in shops where the "1 for 1" ratio is maintained).

e. Fourth and fifth year apprentices will be required to attend additional continuing education courses as prescribed by the Joint Apprentice Committee. Wages will not be paid for attendance. However, a twenty dollar ($20.00) per day per diem will be paid by the Employer to offset transportation and meal expenses.

EXHIBIT No. A

PAGE 45 OF 57

28

# ARTICLE IX
## FRINGE BENEFITS

taxes, of each employee subject to this Agreement and not enrolled in the 401(k) Plan (see Section 6.10 of this Agreement); the sum per hour set forth or to be determined in the manner set forth in Appendix C for each hour worked. These deductions shall be withheld from the employee's weekly wages and shall be forwarded by the Employer with the report of hours required under Section 6.6 of Article VI for deposit in a bank chartered by the State of Illinois to be designated by the Union, for crediting to the individual account of such employee under the Chicago Journeymen Plumbers' Local Union 130 Savings Plan. It is expressly understood and agreed that neither the Employer nor the Union shall have any right, title, interest or powers over such money so forwarded, but that all money so forwarded, deposited or accrued shall at all times remain the exclusive property of the employee from whose pay such deductions are made. An employee may elect to increase the minimum enrolled in the 401(k) Plan may elect to fully participate in the Plumbers' Savings Plan to the same extent as if not enrolled in the 401(k) Plan.

First (1st), second (2nd) and third (3rd) year apprentices, covered by this Agreement shall be exempt from this Section 9.1.

**SECTION 9.2. Health & Welfare and Pension Plan.** Effective as of the dates set forth in Appendix C, each Employer will contribute the sums per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Plumbers' Pension Fund, Local 130, U.A. and for each hour so worked to the Plumbers' Health and Welfare Fund, Local 130, U.A.

Contributions in themselves are deemed as providing coverage as may be required by the law. Eligibility for coverage is controlled by the trust and is another matter apart and separate.

Each Employer adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing:

a. The Plumbers' Pension Fund, Local 130, U.A. being that Trust Agreement dated May 14, 1953; and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

b. The Plumbers' Welfare Fund, Local 130, U.A., being that Trust Agreement dated October 3, 1950, and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

c. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of each of said Funds who from time to time shall be appointed as such in accordance with the terms of the Trust Agreements.

d. The Employer agrees to make the contributions required by this Section 9.2 and Appendix C into the Funds established and governed by said Trust Agreements and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreements and any amendments from time to time or to be made.

Any Employer employing at least two journeymen or one journeyman and one apprentice as permitted may apply for participation in one or more of the Benefit Funds upon signing a Participation Agreement. If the Employer is accepted, contributions must be paid on the basis of forty (40) hours each week for the duration of this Agreement.

Contributions to the benefit funds on behalf of members working within the jurisdiction of Local 93 are capped at forty hours.

**SECTION 9.3. Apprentice Trust Fund.** Effective as of the dates set forth in Appendix C, each Employer will contribute the sum per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Trust Fund for Apprentice and Journeymen Education and Training, Local Union 130, U.A.

Each Employer adopts and agrees to be bound by the terms and conditions of the Agreement establishing and governing the Trust Fund for Apprentice and Journeymen Education and Training, Local 130, U.A., being that Trust Agreement dated June 1, 1965, and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of said Fund who from time to time shall be appointed as such in accordance with the terms of the Trust Agreement. The Employer agrees to make the contributions required by this Section 9.3 and Appendix C into the Fund established and governed by said Trust Agreement and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreement and any amendments from time to time made or to be made.

**SECTION 9.4. Plumbing Council of Chicagoland.** Effective as of the dates set forth in Appendix C, each Employer shall contribute the sums set forth or to be determined in the manner set forth on Appendix C for each hour worked by each employee covered by this Agreement, including apprentices, to the Plumbing Council of Chicagoland, a not-for-profit corporation.

29

The desired policy and priorities of the Plumbing Council will emanate from the Council Advisory Board appointed by the President of the P.C.A. and whose members will represent the P.C.A. on the All Industry Committee that consists of Management and Labor representatives.

The Plumbing Council shall protect, promote, foster, and advance the interests of Employers and employees engaged in the plumbing contracting and servicing industry including, but not limited to, the following pursuits.

a. To engage in public relations programs designed to create a better public understanding of the industry and to encourage greater use of the industry's services by owners and construction and service purchasers for the benefit of the general public.

b. To cooperate with public officials and representatives of other organizations on all matters of mutual interest affecting the construction industry.

c. To foster and promote better Employer/employee relationships and to strive for optimum efficiency and workmanship in construction methods.

d. To foster and provide for the education and training of supervisory and managerial personnel.

e. To promote research and experimentation concerned with improving existing construction methods and developing, testing and promoting new construction materials and/or modes of construction.

f. To promote safety in the plumbing contracting industry by developing programs and activities directed at assisting, technically or otherwise, architects, engineers, specification writers, general contractors, and governmental authorities and agencies, in the formulation or improvement of federal, state, and municipal regulations and other technical and safety programs having as their object the safe, adequate and improved quality of plumbing contractors' service to the public.

g. To support the activities and programs of the Association, including collective bargaining and related matters.

h. To foster and promote compliance with all laws, regulations, and orders concerning affirmative action and equal opportunity for employment.

i. To engage in all other acts consistent with the purposes and terms of this Agreement and with the laws of the State of Illinois.

j. No part of the industry Fund shall be used for any purpose which tends to restrain or limit competition.

k. To support public officials who support legislation beneficial to Plumbing Contractors.

The parties agree that since the Plumbing Council is an industry fund, proposals related to it are permissive subjects of bargaining. While the PCA has agreed that the "pursuits" of the Plumbing Council, as described in the Plumbing Council By-Laws adopted October 16, 2000, are to be included in the Collective Bargaining Agreement, that inclusion should not be construed as a waiver of the PCA's position that this entire subject is "permissive" and should not be construed as any restriction on the Plumbing Council's right to interpret, amend or change the By-Laws including the "pursuits" recited therein.

Any amendment, change, or alteration of the existing Plumbing Council By-Laws adopted October 16, 2000 including "the pursuits" recited therein will not in any way alter, amend, change or affect the provisions of Section 9.4, par 3 of the Collective Bargaining Agreement for the term of this Agreement.

SECTION 9.5. Group Legal Services Plan Fund. Effective as of the dates set forth in Appendix C, each Employer shall contribute the sums set forth or to be determined in the manner set forth in Appendix C for each hour worked by each employee covered by this Agreement, including apprentices, to the Chicago Journeymen Plumbers' Local Union 130, U.A. Group Legal Services Plan Fund.

Each Employer adopts and agrees to be bound by the terms and conditions of the Trust Agreement establishing and governing the Chicago Journeymen Plumbers' Local Union 130, U.A. Group Legal Services Plan Fund with the same force and effect as though said Trust Agreement was set forth here in full. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of said Fund who from time to time shall be appointed as such in accordance with the terms of the Trust Agreement. The Employer agrees to make the contributions required by this Section 9.5 and Appendix C into the Fund established and governed by said Trust Agreement and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of the Trust Agreement and any amendments from time to time made or to be made.

Proposed Amendments to the Group Legal Services Plan Fund will be reviewed by the Trustees of the Group Legal Services Plan Fund.

SECTION 9.6. Industry Advancement Fund. The Union agrees to Management's participation in industry advancement funds and will participate as a partner in proposed industry dialogues.

EXHIBIT NO. A
PAGE 47 OF 56

SECTION 9.7. Non-Deduction from Wages.

a. Contributions provided under Sections 9.2, 9.3, 9.4 and 9.5 shall not be deducted from the wages of the employees.

b. Effective as of the dates set forth in Appendix C of this Agreement, each Employer will contribute the sums per hour set forth or to be determined in the manner set forth in Appendix C for each hour worked excluding time spent in training or education required by the Employer with prior approval of the Joint Arbitration Board by and on behalf of each employee covered by this Agreement.

SECTION 9.8. Contribution and Deduction Due Dates. Except as provided in Section 6.8 for an Employer who is unable to obtain a bond or letter of credit, all contributions and deductions provided for in this Agreement are due the first (18t) day of the month following the month for which they are owed. However, contributions and deductions received by the Union by the fifteenth (15th) day of that month will not be subject to interest and liquidated damage charges (e.g. contributions and deductions for the month of June are due July 1, but can be paid up to July 15 without penalty). An Employer who fails to make such contributions and deductions by the due date therefore, shall pay, in addition to the actual delinquent amounts, interest thereon beginning with the due date at the rate of one and one-half percent (1-1/2%) per month thereon and liquidated damages in the amount of eight percent (8%) on the cumulative outstanding balance due. The delinquent Employer shall also be responsible for any employee's claim for Welfare benefits arising during the period of such delinquency.

If discovered that prior contributions or deductions have not been in accordance with the terms of this Agreement, the Employer advised of the discrepancy shall remit the amounts due plus the above described interest and liquidated damages. The Employer may contest the findings as provided in Article III, Section 3.3 of this Agreement. If then found that monies remain due and payable, the Employer shall remit same within thirty (30) days after the findings. Upon failure to remit monies due within thirty (30) days after the findings, the Employer shall additionally reimburse the Trustees of the various Funds and/or the Union for all costs incurred, including but not limited to legal, audit and court fees, in order to enforce collection of the monies due.

The provisions for interest, liquidated damages, reimbursement of litigation costs, strikes, picketing and/or other remedies set forth herein and available to the Union and/or Trustees of the various Funds in the event of an Employer's breach of any obligation under this Section 9.8 and Sections 9.1, 9.2, 9.3, 9.4, 9.5, 9.7, and 9.9 of this Article IX, and Sections 6.4, 6.5, 6.6 and 6.10 of Article VI are cumulative and are not intended to serve and shall not serve as a substitute for or in any way limit any other remedies or relief which also may be available to the Union and/or the Trustees under this Agreement or under any Illinois or federal law. Further, the

Union's failure to exercise its rights to withdraw its members from the employ of, to picket, strike or take other lawful economic action against any Employer who violates this Section 9.1, 9.2, 9.3, 9.4, 9.5, 9.7 and 9.9 of this Article IX or Sections 6.4, 6.5, 6.6 and 6.10 of Article VI, and/or the Joint Arbitration Board's failure to award any remedy available hereunder for a violation of such Section or Sections, in either case, shall not be deemed a waiver on the part of the Union or the Joint Arbitration Board to exercise such right or award such remedy, respectively, in the case of any such subsequent violations by the same Employer or another Employer.

Upon five (5) days written notice by Certified Mail the Union shall have the right to withdraw its members from the employ of, to picket and/or to take other lawful action against any Employer who fails to make the required benefit contributions and/or deductions as required by this Agreement. Any employee who loses time from work because of the failure of this Employer to pay said fringe benefit contributions and/or deductions as required by this Agreement, shall be reimbursed by the Employer for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or other action taken by the Union under this Section. Such withdrawal of employees, picketing and/or other lawful economic action shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration.

In the event an Employer default in the payment of any contributions or deductions provided for by the terms of this Agreement, it shall be considered the same as failure to pay wages.

SECTION 9.9. Employer Recording. Each Employer shall file with the Union on a reporting form to be devised by the Union, on or before the due date for the remittance of contributions and deductions, an itemization of the money payments required to be paid by the Employer covered by said report under the terms of this Agreement. The Union and Fringe Benefit Funds shall have the right to inspect Employer's payroll records as well as the other records described in Section 1.6 of this Agreement, for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to the contract rate of wages and Fringe Benefit Fund contributions being paid. The Employer shall make such books and records available at reasonable business times and hours, at the option of the Union or Fringe Benefit Funds, either to a Business Representative of the Union or a representative of a certified public accountant designated by the Union or Fringe Benefit Funds. The Employer shall retain payroll records including but not limited to time sheets for a period of ten (10) years. The Union shall have the right upon two (2) days written notice by Certified Mail to withdraw its members from the employ of, to picket and/or to take other lawful economic action against any Employer in order to compel the Employer to make such books and records available. If employees are withdrawn from any job or if the Union strikes in order to compel an Employer to make such books and records available, the employees

32

33

EXHIBIT No. A

PAGE 48 OF 56

34

who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay. Such withdrawal of employees picketing and/or other lawful economic action to compel an Employer to make his books and records available shall not be considered a violation of this Agreement on the part of the Union and it shall not be a subject of arbitration.

## ARTICLE X
### HIRING

1. Each journeyman shall request a referral slip from the Local Union office when changing jobs and present same to his new Employer. If a journeyman does not obtain said referral slip, he may be cited before the Executive Board of the Union. The Employer may be held responsible to the Joint Arbitration Board for anyone he hires and puts to work without a referral slip. The Union shall refer applicants for employment according to the following minimum standards:

   The selection of applicants for referral to any job shall be on a nondiscriminatory basis and shall not be based on or in any way affected by the applicant's race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service in accordance with relevant Illinois, local, and federal law.

2. The Employer shall have the sole and exclusive right of accepting or rejecting applicants for work and need not give preference or priority to applicants referred by the Union.

3. The selection, hiring, supervision and training of all apprentices shall be subject to the rules and control of the Plumbers Joint Apprenticeship Committee L.U. 130 U.A., and further shall be subject to the Provision of Article X, Paragraph 1 of this Agreement.

4. All referral slips must contain the following information:

   a. The employee's name, social security number, plumbing license number, address, and telephone number;

   b. The employee's certifications, i.e., OSHA, HAZCOM, competent person, safety course, cross connection and back flow license, etc.;

   c. The Employer's name, address, telephone number, the location, date and time, to report, and whom to contact at that location.
   A copy of the referral slip will be mailed to the employee, and a copy of the referral slip will be faxed to the Employer.

NOTE: The Plumbing Council of Chicagoland and Plumbing Contractors Association will notify all contractors of the requirement of requesting a referral slip from all new hires. This requirement will also be a subject of discussion at an All Industry meeting.

5. When the Union does not furnish qualified persons within forty-eight (48) hours (Saturdays, Sundays and holidays excluded) of the initial request, the Employer shall be free to obtain people from any source. In doing so the Employer shall be permitted to hire persons. It is understood that preference for such employment shall be given to journeymen with previous experience in the plumbing industry.

## ARTICLE XI
### ON THE JOB INJURIES

Employees covered by this Agreement who, as a result of injuries received on the job, are required to obtain medical aid for such injuries, shall be reimbursed for said time spent in obtaining medical aid. If the Employer's doctor or Employer's insurance company doctor makes available to the injured employee evening or non-working hours for further aid or treatment of an injury, which will not cause a loss of regular work time, then said employee shall arrange to have all further visits to the doctor scheduled for non-working hours.

## ARTICLE XII
### INDUSTRY COMMITTEE

The parties hereto agree that it is in the mutual interest of those engaged in the plumbing industry to have a formal mechanism to deal with issues which concern the industry and which affect the interests of the Employers and Union and employees represented by the Union who are parties to, bound by or covered by this Agreement. Therefore, the parties hereto agree to establish an All Industry Committee to meet, discuss and deal with such issues. Said Committee shall be composed of the President of the Plumbing Contractors Association of Chicago and Cook County; three (3) members appointed by the President of the Contractors Association who shall be Employers and who shall serve in an advisory capacity, to the Plumbing Council of Chicagoland, Inc.; the Union's Business Manager and three (3) members appointed by the Business Manager from among the offices of the Union. Co-Chairmen shall be elected (one Labor and one Management) from the designated members of the Committee. The Committee shall meet from time to time as determined by the Co-Chairmen. All meeting expenses and costs shall be shared equally by the Contractors Association and the Union. The expenses and costs incurred by either the Contractors Association or the Union in connection with any action or undertaking by those respective parties related to or arising out of any matter considered by the Committee shall be borne by the party taking such action.

EXHIBIT No. A
PAGE 49 OF 56

## ARTICLE XIII
## JURISDICTIONAL DISPUTES

The Employer and Union agree that in the event of any jurisdictional dispute between the Union and another labor organization bound by the Standard Agreement establishing the Joint Conference Board of the Construction Employers' Association and the Chicago and Cook County Building Trades Council with respect to any work at or related to any site or project within Cook County, Illinois at which the Employer is engaged or is to be engaged as a contractor or a subcontractor or to perform any work, said dispute shall be submitted to said Joint Conference Board for final and binding resolution pursuant to said Standard Agreement and the Board's procedures thereunder. The Employer and Union agree to be bound by the procedures and decision of the Joint Conference Board with respect to any such dispute in accordance with said procedures.

## ARTICLE XIV
## SUCCESSORS AND ASSIGNS

SECTION 14.1. Employer Entities Bound. This Agreement is binding upon the Employer regardless of whether he or it changes the name or address of his or its business and upon any other business entity within the trade and territorial jurisdiction of the Union which is owned, managed, controlled and/or operated by the Employer or its principals or any of them. This paragraph is intended to apply to the scope of work covered by this Agreement and shall not be construed as adding to the scope of such work.

SECTION 14.2. Successors and Assigns. This Agreement shall be equally binding on the Employer and its successors and assigns and it is the intent of the parties that this Agreement shall remain in effect for its full term and bind the successors of the respective parties. In furtherance of this intent, it is agreed that in the event of any sale, merger, acquisition, consolidation or any other transfer of the Employer's business, the Employer shall make it a condition of such transfer and the agreement by which any such transfer is accomplished shall provide that the transferee shall be bound by the terms of this Agreement. The Employer shall give the Union written notice of any such transfer at least ten (10) days prior to the closing date thereof and specifically advise the Union in said notice that the provisions of this Article have been complied with.

## ARTICLE XV
## ANNUAL REOPENERS

ARTICLE XV HAS BEEN INTENTIONALLY LEFT BLANK

## ARTICLE XVI
## MISCELLANEOUS

SECTION 16.1. Separable Provisions. Each and every clause of this Agreement shall be deemed separable from each and every other clause of this Agreement to the end that in the event that any clause or clauses shall be specifically and finally determined to be in violation of any Illinois or federal law, then in such event such clause or clauses only, to the extent only that any may be so in violation, shall be deemed of no force and effect and unenforceable upon written notice of such invalidity from one party to the other, without such invalidity impairing the validity and enforceability of the rest of the Agreement including any and all provisions in the remainder of any clause, sentence or paragraph in which the language determined to be invalid may appear. In the event of such invalidity and notice thereof, the parties shall meet promptly at the request of either party to negotiate mutually acceptable substitute language. If the parties are unable to agree on such substitute language, either party shall be permitted to exercise all legal and lawful economic recourse in support of its demands notwithstanding any provisions of this Agreement to the contrary.

SECTION 16.2. Duration of Agreement. The collective bargaining agreement between the Chicago Journeymen Plumbers' Local 130, U.A. and the Plumbing Contractors Association of Chicago and Cook County shall be in effect between June 1, 2007, and May 31, 2010, and thereafter for successive yearly periods, unless written notice to terminate or with its intention to modify the Agreement is received, by certified mail – return receipt requested, no more than ninety (90) days but no less than sixty (60) days prior to the expiration date of any such then current collective bargaining agreement.

EXHIBIT No. A
PAGE 50 OF 56

# ARTICLE XVII
## SERVICE & MAINTENANCE AGREEMENT

The Agreement recognizes that there exists a Plumbing Service & Maintenance Area agreement, the Chicago Journeymen Plumbers' Local Union 130, U.A. Service & Maintenance Agreement. Whenever the terms of this Agreement shall conflict with the terms of the Service & Maintenance Agreement, the terms of the Service & Maintenance Agreement shall control.

This Agreement is hereby executed as of the 1st day of June 2007 at Chicago, Illinois.

PLUMBING CONTRACTORS ASSOCIATION OF
CHICAGO AND COOK COUNTY

George W. Treutelaar
Chairman of Labor Relations Committee

Lori Abbott
Labor Relations Committee

Craig Campeglia
Labor Relations Committee

Peter Fazio
Labor Relations Committee

Walter A. Brongiel
Labor Relations Committee

CHICAGO JOURNEYMEN PLUMBERS'
LOCAL UNION 130, U.A.

James T. Sullivan
Business Manager

James F. Coyne
Secretary-Treasurer

Thomas E. Gavin
Recording Secretary

---

# APPENDIX A
## OCCUPATIONAL JURISDICTION

The following shall constitute the occupational jurisdiction of work of the Union:

1. All piping for plumbing, water, waste, floor drains, drain grates, supply, leader, soil pipe, grease traps, sewage and vent lines.
2. All piping for water filters, water softeners, water meters and setting of same.
3. All cold, hot and circulating water lines, piping for house pumps, cellar drainers, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances and the handling and setting of the above mentioned equipment.
4. All water services from mains to buildings, including water meters and water meter foundations.
5. All water mains from whatever source, including branches and fire hydrants, etc.
6. All down spouts and drainage areas, soil pipe, catch basins, manholes, drains, gravel basins, storm sewers, septic tanks, cesspools, water storage tanks; etc.
7. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and washrooms, shower stalls, etc.
8. All bathroom, toilet room and shower room accessories, i.e., as towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.
9. All lawn sprinkler work, including piping, fittings and lawn sprinkler heads.
10. All sheet lead lining for X-ray rooms, fountains, swimming pools or shower stalls, tanks or vats for all purposes and for roof flanges in connection with the pipe fitting industry.
11. All fire stand pipes, standpipes, pressure and storage tanks valves, hose racks, fire hose cabinets and accessories and all piping for sprinkler work of every description.
12. All block tin coils, carbonic gas piping, for soda fountains and bars, etc.
13. All piping for railing work, and racks of every description, whether screwed or welded.
14. All piping for pneumatic vacuum cleaning systems of every description.
15. All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil, or gas used in connection with railway cars, railway motor cars, and railway locomotives.
16. All marine piping, and all piping used in connection with ship building and ship yards.
17. All power plant piping of every description.
18. The handling, assembling and erecting of all economizers and super-heaters, regardless of the mode or method of making joints, hangers and erection of same.
19. All internal and external piping on boilers, heaters, tanks and evaporators, water legs, water backs and water grates, boiler compound equipment, etc.

20. All soot blowers and soot blowing systems.

21. The setting, erecting and piping, for all smoke consuming and smoke washing and regulating devices.

22. The setting, erecting and piping of instruments, measuring devices, thermo-static controls, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, mining and industrial work.

23. The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers, and all piping for same in power houses, distributing and boosting stations, re-frigeration, bottling, distilling and brewing plants; heating, ventilating and air conditioning systems.

24. All piping for artificial gases, natural gases and holders and equipment for same, chemicals, minerals and by-products and refining of same, for any and all purposes.

25. The setting and erecting of all under-feed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping and accessories and parts of burners and stokers, etc.

26. All ash collecting and conveyor piping systems, including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.

27. The setting and erection of all oil heaters, oil coolers, storage and distribu-tion tanks, transfer pumps, and mixing devices, and piping thereto of every description.

28. The setting and erecting and piping of all cooling units, pumps, reclaiming systems and appurtenances, in connection with transformers, and piping to switches of every description.

29. All fire extinguishing systems and piping; whether by water, steam, gas or chemical, fire alarm piping, and control tubing, etc.

30. All piping for sterilizing, chemical treatment, deodorizing and all cleaning systems of every description and laundries for all purposes.

31. All piping for oil or gasoline tanks, gravity and pressure lubricating and greas-ing systems, air and hydraulic lifts, etc.

32. All piping for power, or heating purposes, either by water, air, steam, gas, oil, chemicals or any other method.

33. All piping, setting and hanging of all units and fixtures for air conditioning, cooling, heating, roof cooling, refrigerating, ice-making, humidifying, dehu-midifying, dehydrating by any method, and the charging and testing, servicing of all work after completion.

34. All pneumatic tube work, and all piping for carrying systems by vacuum, compressed air, steam, water, or any other method.

35. All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers and boilers and cooking utensils, etc. of every description.

36. All piping in connection with central distribution filtration treatment stations, boosting stations, waste and sewage disposal plants, central chlorination and

37. All process piping for refining, manufacturing, industrial and shipping pur-poses, of every character and description.

38. All air piping of every description.

39. All temporary piping of every description in connection with building and construction work, excavating and underground construction.

40. The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers conduits and boxes used in connection with the pipe fitting industry.

41. The handling and setting of boilers, setting of fronts, setting of soot blowers, and attaching of all boiler trimmings.

42. All pipe transportation lines for gas, oil, gasoline, fluids and liquids, water aqueducts, and water lines and booster stations of every description.

43. All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, caulked joints, expanded joints, rolled joints or any other mode or method of making joints in connection with the pipefitting industry.

44. Laying out, cutting, bending and fabricating of all pipe work of every descrip-tion, by whatever mode or method.

45. All methods of stress relieving of all pipe joints made by every mode or method.

46. The assembling and erecting of tanks used for mechanical, manufacturing or industrial purposes, to be assembled with bolts, packed or welded joints.

47. The handling and using of all tools and equipment that may be necessary for the erection and installation of all work and materials used in the pipefitting industry.

48. The operation, maintenance, repairing, servicing and dismantling of all work installed by journeymen under this Agreement.

49. All piping for cataracts, cascades, i.e., (artificial water falls), make-up water fountains, captured waters, water towers, cooling towers, and spray ponds, used for industrial, manufacturing, commercial, or any other purpose.

50. Piping herein specified means pipe made from metals, tile, glass, rubber, plastic wood, or any other kind of material or product manufactured into pipe, usable in the pipe fitting industry, regardless of size or shape.

51. The installation and testing of backflow preventors.

EXHIBIT No. A
PAGE 52 OF 54

# APPENDIX B
## FLEXIBLE WORK DAY AND WORK WEEK

Except as specifically permitted under the following provisions of this Appendix B governing flexible work days and the flexible work week, employees covered by the Agreement to which this Appendix B is attached shall work the standard work day and standard work week at the straight time rates and be paid for overtime work at the overtime rates as provided in Section 5.2 of the Agreement.

1. Only Employers who employ apprentice plumbers may be permitted to utilize a flexible work day or a flexible work week. An adequate quantity of competent apprentices are available through the Joint Apprenticeship Committee.

2. The flexible work day and flexible work week are not permitted for any work done on a contract basis. They are permitted only under the terms further specified herein below for residential, commercial or industrial jobbing repair and/or service work billed to the customer on an hourly basis.

3. No employee may be scheduled for or required to work more than eight (8) flexible hours in any work week.

4. The flexible work day, Monday through Friday, consists of up to eight (8) consecutive hours between 6:00 a.m. and 8:30 p.m., exclusive of a one-half (1/2) hour unpaid meal break to be taken no later than five (5) hours after the employee's starting time; provided, however, that in no event may such a flexible work day start later than 12:00 p.m. (noon). The pay rate for flexible hours worked before the regular starting time for the Employer's shop (i.e. 6:00 a.m. or 9:00 a.m.) and after the regular quitting time (i.e. 2:30 p.m. or 5:30 p.m.) shall be the regular straight time hourly rate plus fifteen percent (15%). All hours worked on such days in excess of eight (8) hours shall be paid at one and one-half (1-1/2) times the regular straight time hourly rate.

5. Eligible Employers may schedule Saturdays as a regular fifth (5th) flexible work day in any work week for jobbing repair and/or service work. In such cases, the Saturday flexible work day shall consist of the hours between 8:00 a.m. and 4:30 p.m., exclusive of a one-half (1/2) hour unpaid lunch break taken no later than five (5) hours after the starting time. Employees who are required to work Saturdays as a flexible fifth (5th) work day and who are required to perform residential jobbing repair and/or service work in a residential building of no more than three (3) stories on such day shall be paid at their regular straight time hourly rate for such fifth (5th) day for such work between the hours of 8:00 a.m. and 4:30 p.m. Employees who are required to perform any commercial or industrial jobbing repair and/or service work or to perform jobbing repair and/or service work in a residential structure of more than three (3) stories during such hours on Saturdays shall be paid at their regular straight time hourly rate plus fifteen percent (15%) for all such

hours. All jobbing repair and/or service work performed on such Saturdays before 8:00 a.m. or after 4:30 p.m. shall be paid for at one and one-half (1-1/2) times the regular hourly rate. Such Saturdays cannot be used as a make-up day. All work for which flexible time is permitted by this Appendix "B" to be performed on Sunday or a legal, holiday identified as such in the Agreement shall be paid at double time.

EXHIBIT No. A
PAGE 53 OF 56

# APPENDIX C

## WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS

The following wage rates and fringe benefit contributions per hour and payroll deductions shall be in effect as of June 1, 2007, through May 31, 2008.

### PAYROLL DEDUCTIONS

| | Wages | Welfare | Pension | Education | Promotion | Legal Services | 401(k) Plan | Working Dues |
|---|---|---|---|---|---|---|---|---|
| Journeymen | $47.00 | $8.84 | $5.56 | $1.03 | $0.59 | $0.59 | $1.50 | $0.32 |
| Sub-Foremen | $42.25 | $8.84 | $5.56 | $1.03 | $0.59 | $0.58 | $1.50 | $0.32 |
| Foremen and Inspector | $43.00 | $8.84 | $5.58 | $1.03 | $0.59 | $0.58 | $1.50 | $0.32 |
| Superintendent in Dist., Foreman (Supervising 4 or more nvn): | $44.00 | $8.84 | $5.55 | $1.03 | | $0.59 | $1.50 | $0.32 |
| General Supts. or District Supts. (1°at least 6% above Superintendent): | ... | $8.84 | $5.56 | $1.03 | $0.59 | $0.59 | $1.50 | $0.32 |
| **Apprentices** | | | | | | | | |
| 1st 6 months | $13.95 | $3.34 | $5.58 | $1.23 | N/A | $0.55 | N/A | $0.23 |
| 2nd six months | $15.15 | $3.84 | $5.55 | $1.23 | N/A | $0.58 | N/A | $0.23 |
| 2nd 6 months | $16.05 | $3.84 | $5.56 | $1.23 | N/A | $0.58 | N/A | $0.23 |
| 3rd Year | $20.50 | $3.84 | $5.56 | $1.23 | N/A | $0.58 | $1.50 | $0.23 |
| 4th Year | $27.05 | $8.84 | $5.56 | $1.23 | $0.55 | $0.58 | $1.50 | $0.23 |
| 5th Year | $30.75 | $8.84 | $5.56 | $1.03 | $0.59 | $0.58 | $1.00 | $0.32 |

No employer contributions required on apprentices, while attending assigned school day.

| **Metal Trades Journeymen** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Mt 1st six months (No Benefits) | $13.35 | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Mt 2nd six months | $15.15 | $3.84 | $5.56 | $1.03 | $0.59 | $0.58 | $1.50 | $0.23 |
| Mt 2nd Year | $18.05 | $8.84 | $5.56 | $1.03 | $0.59 | $0.58 | $1.50 | $0.23 |
| Mt 3rd Year | $21.50 | $8.84 | $5.56 | $1.03 | $0.59 | $0.58 | $1.50 | $0.23 |
| Mt 4th Year | $27.05 | $8.84 | $5.56 | $1.03 | $0.59 | $0.58 | $1.50 | $0.32 |
| Mt 5th Year | $30.75 | $8.84 | $5.56 | $1.03 | $0.59 | $0.58 | $1.00 | $0.32 |

Includes $0.05 per hour Direct Contribution to the U. A. Training Fund.
Includes $0.05 per hour Direct Contribution to the Plumbing Industry Drug-Free Alliance Program

Wage increases of $2.80 per hour effective June 1, 2008, and $2.90 per hour effective June 1, 2009, have been negotiated under the terms of this Agreement for Journeymen Plumbers. Apprentice wage increases effective June 1, 2008, and June 1, 2009, will be determined by a percentage of the Journeymen rate. An apprentice with a minimum of 4 ½ years credit who has successfully obtained the City of Chicago or State of Illinois plumbers license test shall be paid the then current journeymen rate. These increases for journeymen and apprentices are to be allocated in a manner to be determined by Chicago Journeymen Plumbers' Local Union 130, U.A. in its sole and exclusive discretion. Local 130 will timely notify each signatory Employer of its determination concerning the allocation.

# IMPORTANT INFORMATION

## PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN) AND SAVINGS PLAN

### PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN):

The Employer shall deduct from the wages (before taxes) of each journeyman plumber enrolled in the 401(k) Plan a minimum of one dollar and fifty cents ($1.50) per each hour worked for the Plumbers' Retirement Savings Fund (401(k) Plan). The Employer shall deduct from the wages (before taxes) of each Fourth and Fifth year Apprentice enrolled in the 401(k) Plan a minimum of one dollar (1.00) per each hour worked for the Plumbers Retirement Savings Fund (401(k) Plan). First, Second and Third year Apprentices are not included in this Plan.

### REGULAR SAVINGS PLAN:

The Employer shall deduct from the wages (after taxes) of each journeyman plumber not enrolled in the 401(k) plan a minimum of one dollar and fifty cents ($1.50) per each hour worked for the Savings Plan. The Employer shall deduct from the wages (after taxes) of each Fourth year and Fifth year Apprentice not enrolled in the 401(k) plan a minimum of one dollar ($1.00) per each hour worked for the Savings plan. First, Second and Third year Apprentices are not included in this Plan.

### WORKING DUES:

The Employer shall deduct (after taxes) thirty-two cents ($0.32) per hour for each hour worked for each Journeyman, Foreman, Superintendent and General Superintendent, and twenty-three cents ($0.23) per each hour worked for each Apprentice, with the exception of first year-first six months Apprentices for Working Dues.

### IMPORTANT NOTE

#### PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN)

A participant can direct more than the base contributions rate of $1.50 per hour, in increments of ($0.50) fifty cents, but not more than $10.00 per hour to the 401(k) Plan not to exceed the IRS limits.

#### PLUMBERS' SAVINGS PLAN

An employee, in cooperation with his/her Employer, has the following options:

1. An employee not participating in the 401(k) Plan can allocate more than $1.50 per hour, in increments of fifty cents ($0.50), to the Plumbers' Savings Plan.

2. An employee in the 401(k) Plan can allocate at least $1.50 per hour or more, in fifty cents ($0.50) increments, to the Plumbers' Savings Plan, in addition to amounts contributed to the employee's 401(k) Plan.

EXHIBIT No. C
PAGE 54 OF 56

**APPENDIX D**
**ALCOHOL AND DRUG PROGRAM**

SEE APPENDIX D SUPPLEMENT BOOK

**APPENDIX E**
**UNITED ASSOCIATION**
**STANDARD OF EXCELLENCE**

SEE APPENDIX E SUPPLEMENT BOOK

**NOTES**

EXHIBIT No. A
PAGE 55 OF 56

*WEC*

## MEMORANDUM AGREEMENT

This Agreement is made and entered into by and between the undersigned sole proprietorship, partnership or corporation who is duly authorized by law and bonded to engage in the plumbing business and is established therein and who regularly employs not less than two (2) Journeymen Plumbers (hereinafter referred to as the "Employer"), and Chicago Journeymen Plumbers' Local Union 130, U.A., which is composed of competent mechanics, who are duly authorized by law to install and inspect all plumbing work (hereinafter referred to as the "Union").

1.    The Employer recognizes the Union as the exclusive collective bargaining agent for all of its employees who perform any of the work within the trade and territorial jurisdiction of the Union as set forth in the agreement and agreements referred to in paragraph 2, below.

2.    The Employer and Union specifically adopt and agree to abide by and be bound by all clauses, terms and provisions of the collective bargaining agreement between the Union and the Plumbing Contractors Association of Chicago and Cook County (hereinafter referred to as the "Contractors Association") dated June 1, 1992 with the same force and effect as though said collective bargaining agreement were set forth in full herein, and any amendments, modifications, supplements, extensions or renewals thereof, and any subsequent collective bargaining agreements as will be negotiated from time to time in the future by the Union and Contractors Association, unless notice to terminate this Memorandum Agreement is given by the Union or Employer in the manner provided in paragraph 4, below.

3.    The Employer further specifically adopts and agrees to abide by and be bound by all the clauses, terms and provisions of the Trust Agreements establishing and governing:

  (a)   the Plumbers' Pension Fund, Local 130, U.A., being that Trust Agreement dated May 14, 1953;

  (b)   the Plumbers' Welfare Fund, Local 130, U.A., being that Trust Agreement dated October 3, 1950;

  (c)   the Trust Fund for Apprentice and Journeymen Education and Training, Local 130, U.A., being that Trust Agreement dated June 1, 1965;

  (d)   the Chicago Journeymen Plumbers' Local Union 130, U.A. Group Legal Services Plan Fund, being that Trust Agreement dated May 11, 1987;

and any amendments previously made thereto with the same force and effect as though said Trust Agreements were set forth in full herein. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of each of said Funds who from time to time shall be appointed as such in accordance with the terms of the Trust Agreements. The Employer agrees to make the contributions required by the Association Agreements referred to in paragraph 2, above, into the Funds established and governed by said Trust Agreements and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreements and any amendments from time to time made or to be made.

4.    This Memorandum Agreement is effective as of June 1, 1992 if the Employer was a party to or was legally bound by the Union's Area Agreement which expired on May 31, 1992. Otherwise, it shall be effective as of the date it is executed by the parties hereto. This Memorandum Agreement may be terminated by the Union or the Employer on the same date as the expiration date of any then current collective bargaining agreement between the Union and the Contractors Association referred to in paragraph 2, above, by the party hereto so wishing to terminate this Memorandum Agreement giving the other no more than ninety (90) days but no less than sixty (60) days written notice of termination by certified mail—return receipt requested prior to the expiration date of any such then current collective bargaining agreement.

5.    The Employer agrees to notify the Union in writing of any changes in the information filled in by the Employer below on this Memorandum Agreement.

This Memorandum Agreement executed by the Employer on   10 / 30 / 95

JOLIET PLUMBING AND HEATING CO,INC.
Full Correct Name of Employer (Business)

1736 EAST CASS STREET          JOLIET      ILLINOIS      60432
Street Address                  City         State        Zip Code

(815) 727-7765                      (815) 727-7767
Business Phone Number               Home Telephone Number

Check One: Sole Proprietorship_____ Partnership_____ Corporation___X___

Contractor's Illinois State or City of Chicago License Number  058-130709

By Donald J. Harland                              Title PRESIDENT
        (Signature)

Executed on behalf of Chicago Journeymen Plumbers' Local Union 130, U.A.

Gerald M Sullivan    56   56
Gerald M. Sullivan, Business Manager

WHITE COPY — UNION
YELLOW COPY — CONTRACTOR
I-15 8/95